Glenn Carlton KINARD, Appellant,

v.

UNITED STATES, Appellee.

No. 5678.

District of Columbia Court of Appeals.

Argued Sept. 8, 1971.

Decided March 6, 1972.

William Gray Schaffer, Washington, D. C., appointed by this court, for appellant.

William H. Schweitzer, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry, Robert D. Zsalman and John T. Kotelly, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and PAIR, Associate Judges.

KELLY, Associate Judge:

Appellant Kinard, convicted by the court of possession of narcotics in violation of D.C.Code 1967, § 33–402, challenges the denial of his motion to suppress, heard both pretrial and at trial. For the reasons which follow we reverse and remand for a new trial.

At the pretrial hearing of the motion to suppress Officer Ramirez testified that on November 28, 1970, at approximately 9:00 p. m., he and his partner, in plain clothes and patrolling in a private vehicle, passed appellant and another individual, one Fred Brown, walking in the 700 block of I Street, N.W., in this city. Because the two men looked back over their shoulders, Ramirez said, the officers made a U-turn, switched off the car headlights, and began to follow them. Appellant and Brown turned south on 6th Street and met a third person at 6th and H, with whom they conversed briefly. They then entered a store in the 600 block of H Street while the

third man waited outside. Several minutes later appellant and Brown came out of the store and the three men returned to the corner of 6th and H. The third man then went on his way, while appellant and Brown walked south to the 700 block of 6th Street and entered an apartment building from which they emerged about five minutes later. They proceeded south to the 500 block of 6th, entered another apartment building, and reappeared in approximately ten minutes. At this point the police officers, who were parked across the street, made a U-turn, pulled in front of the two men and stopped the car. As they stepped from the car, exhibiting badges, Officer Ramirez said "police" or "police officers", whereupon appellant stepped back, thrust his hand into his right coat pocket and removed what appeared to be a white piece of paper which "he threw into his mouth." Simultaneously, Officer Ramirez grabbed appellant's arm, then ordered him to spit the object out of his mouth and, when appellant complied, picked up the object from the ground. He found it to be a plastic packet containing a white powder, later identified as heroin.

Officer Ramirez testified that when he accosted appellant and Brown he intended to "get identification from [them] . . . [i]n regard to their actions", but had no intention of arresting them. He would not, however, because of the suspicion in his mind, have permitted them to walk away without identifying themselves.[1]

Both appellant and Brown testified that they were stopped on 6th Street by two officers who "jumped" from their car, ordered them to place their hands against the wall and searched them. They testified that the packet containing a white substance was found in appellant's pocket. Both were arrested.

The motions judge specifically found the police officer's testimony credible, but expressed a concern about the officer's right, under the circumstances, to stop the two men. Nevertheless, after taking the matter under advisement, he denied the pretrial motion to suppress without comment.

At trial, on direct examination, Officer Ramirez repeated his pretrial testimony, detailing the approximately twenty-minute observation of appellant and Brown. Additionally, however, when asked whether or not he had recognized appellant at any time during this period of observation, he replied that he had. Ramirez went on to testify that he recognized appellant from photographs shown to him four days before the incident in question by a detective on the Robbery Squad who had commented that he was obtaining a warrant for appellant's arrest and wished to be notified if he were seen. Ramirez was told that the name of the man sought was Glenn Kinard.

On cross-examination Ramirez testified that he thought he had recognized appellant when he first saw him, but as he was not absolutely sure, he had eventually stopped appellant to ask if his name was Kinard. If it had been, Ramirez said, he was going to check with Central Records to see if the arrest warrant had issued, since for some inexplicable reason he had not done so on the police radio during the twenty-minute observation. Rather, he planned to check through a call box and detain appellant for the five to fifteen minutes necessary to determine whether such an arrest warrant was on file.

Obviously concerned by this change of testimony, the court questioned Officer Ramirez respecting his failure to testify at the pretrial hearing about his conversation

---

1. "Just the suspicious manner in which they were acting in that section of town. There have been a lot of robbery [sic] in that area and a lot of breaking into automobiles, and just about anything else you could name." Supplemental Record at 14.

with the Robbery Squad detective. Ramirez' answer was that

> I had never before been called to a motions court and I was not sure that you can bring out that the defendant was wanted for robbery, and I had lost a case prior in court by doing—before by saying that the defendant I was testifying against had a previous record. I just didn't want to bring it out, possibly destroy the case. [Tr. 39.]

The court elicited further testimony that a warrant had been obtained for appellant's arrest, but not when,[2] and that Ramirez had told the Assistant United States Attorney who "papered" the case about the warrant and assumed the Assistant United States Attorney in the motions court had that information.

The trial judge also reserved decision on the motion pending receipt of memoranda. He ultimately decided that there was no probable cause to arrest appellant, nor a "Terry-type" situation which permitted a frisk, when Officer Ramirez stepped from the car, but ruled that under the circumstances Ramirez did have a right to interrogate appellant and his companion, and when, after identifying himself, he saw appellant put something in his mouth, Ramirez had probable cause to arrest and search appellant.[3] Specific reliance was placed on United States v. Lee, D.C.App., 271 A.2d 566 (1970) and Dickerson v. United States, D.C.Mun.App., 120 A.2d 588 (1956).

In making his ruling the trial judge did not take into account the additional testimony given at trial with respect to the information Ramirez claimed to have had about appellant prior to the arrest. Those facts were purposely disregarded and, essentially, the ruling was based on the testimony given pretrial.[4] The court was justifiably critical of the police officer, stating that the officer was bound to give the court the entire story and not deal out his testimony "like a deck of cards",[5] and went to some lengths "to make clear, for the purposes of appeal, that it [was] not putting *any credence* . . . "[6] in Ramirez' testimony about the purported warrant. [Emphasis supplied.]

Because of the unusual procedural development of this case we are unable to assess the precedential effect upon it of United States v. Lee, in which this court reviewed "the record in the context of a finding that the officer's testimony was believed in all material respects".[7] The opposite appears true here, yet the ruling is sufficiently equivocal to suggest that a remand is required for purposes of clarification. In our judgment, Ramirez' trial testimony should not have been ignored. If, when the court announced that it put no credence in the testimony about the warrant it meant, literally, that Ramirez was not telling the truth, then the deception was of such magnitude as to completely destroy the officer's credibility. On the other hand, if the trial court disregarded the testimony because it disapproved of the officer's failure to "take all reasonable steps to assure that [his] testimony accurately reflects what occurred"[8] when he testified pretrial, there were more appropriate procedures available to express that disapproval. It may indeed be that through inexperience the officer improperly arrogated to himself the task of restricting his testimony lest he stray into legally hazardous areas. If this is true, however, and if the court believed it to be true, the officer's later testimony should

---

2. Significantly, there was none on file the night of the arrest.

3. The trial judge specifically found that the order to expectorate what appellant had in his mouth was a search.

4. The trial judge had obtained a transcript of the pretrial testimony prior to reaching his decision.

5. Tr. 69.

6. *Id.*

7. D.C.App., 271 A.2d 566, 567 (1970).

8. Rouse v. United States, 123 U.S.App. D.C. 348, 350, 359 F.2d 1014, 1016 (1966). [Footnote omitted.]

have been credited and other legal or administrative sanctions applied. In short, we think the circumstances of this case require a "fresh determination of the suppression issue"[9] and a definitive ruling thereon which this court can review.

Accordingly, the judgment of the trial court is

Reversed and the case remanded for a new trial.

9. *Id.* *Cf.* Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862 (1965).