William M. ROUSE, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 19489.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 16, 1966.

Decided April 13, 1966.

Mr. George W. Wise, Washington, D. C. (appointed by this Court), for appellant.

Mr. Mervyn Hamburg, Atty., Dept. of Justice, of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief for appellee. Mr. Patrick H. Corcoran, Asst. U. S. Atty., at time record was filed, and Miss Carol Garfiel, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and FAHY and McGOWAN, Circuit Judges.

BAZELON, Chief Judge:

Appellant was convicted of two counts of possession under the Federal Narcotics Laws. The issues raised on appeal concern the admissibility of narcotics seized by the police. Although appellant attacks the denial of a pre-trial motion to suppress, his primary target is the trial judge's refusal to reconsider the suppression issue after a change in police testimony at trial.

Appellant testified at the suppression hearing that he was walking along the street in search of a taxicab at about 4 o'clock in the morning when a black unmarked Plymouth sedan stopped alongside him and two men in plainclothes stepped from the car; that one of them told him to "hold it"; that he was then searched, narcotics were uncovered, and he was charged with narcotics violations and vagrancy. If this version of the facts is accepted, appellant's arrest was unlawful and the search invalid.

Two police officers, Jenkins and Whited, both testified, however, that appellant had abandoned the narcotics in a pile of wooden pallets in an alley within their eyesight and while fleeing their unmarked police cruiser. If the narcotics were thus abandoned there was no illegal seizure. But the remainder of the police testimony was inconsistent. Whited stated that Jenkins was driving the police cruiser; Jenkins said Whited was driving. Whited stated that they spotted appellant "just a short distance" into the alley off R Street and that he was walking away from the cruiser; Jenkins testified that appellant was "not anywhere near R Street in the alley but was toward S Street and was coming toward" them. Officer Whited said that they followed appellant in a northerly direction along the alley and that he turned left into an intersecting alley. Officer Jenkins' testimony was the opposite.

Quite understandably, the suppression judge expressed concern over the numerous inconsistencies in police testimony and refused to accept the government's characterizations of the inconsistencies as "slight" or "immaterial." He nonetheless denied the motion to suppress, reserving to appellant the right to renew the motion at trial and offering to order a copy of the transcript of the hearing for the trial judge.

At trial, Officer Jenkins changed his testimony, bringing it almost into line with that of Officer Whited. When confronted with his earlier testimony, given at the suppression hearing, Officer Jenkins explained that he "had the facts of this case confused with another narcotics case involving a subject of similar circumstances in which an arrest was made just about twenty days prior to this one." At the conclusion of Jenkins' testimony, and again after Whited had testified in part, appellant's counsel renewed his contention that the narcotics were illegally seized. He requested the trial judge to allow him to question Officer Whited out of the presence of the jury. The trial judge stated, "[A]fter one judge has ruled on the motion to suppress evidence, I don't usually hear it again. I let them rely upon the showing made at that time." After reading the transcript of the pre-trial hearing, the trial judge denied the motion to reconsider the question of admissibility of the narcotics on the sole ground that the suppression judge had held a "full and complete" hearing, and that his ruling was "the law of the case." We think the trial judge erred.

A pre-trial ruling on a motion to suppress does not bind the trial judge in

all circumstances.[1] New facts, new light on the credibility of government witnesses, or other matters appearing at trial may cast reasonable doubt on the pretrial ruling.[2] It then becomes the duty of the trial judge to consider de novo the issue of suppression and, if necessary, hold a hearing out of the presence of the jury.[3]

 The courts are particularly sensitive to new matters concerning a search incident to a warrantless arrest. A warrant requires a before-the-event justification which involves confirmation of legality by a judicial officer. When probable cause appears, a warrant is not required for an arrest in public, even where practicable.[4] However, the police, who have the burden of showing that a warrantless arrest was valid,[5] must take all reasonable steps to assure that their testimony accurately reflects what occurred.[6] And the courts must "scrutinize more closely the testimony in cases involving warrantless arrests."[7]

 In the present case, doubts concerning the sufficiency of the police testimony came not alone from the inconsistency at the suppression hearing. The vagrancy charge against appellant lends support for appellant's version of a search incident to an arrest rather than the converse. And it is difficult to understand the police testimony that appellant took flight upon seeing them, even though they were in plainclothes in an unmarked automobile. As the suppression judge realized, the government's case on suppression was indeed a precarious one.

 Then at trial came Officer Jenkins' explanation that he had been confused. The Officer stated that he had made two arrests within twenty days involving "similar circumstances," thereby inferring that the earlier arrest also involved flight of the suspect and abandonment of narcotics in an alley near R Street at about 4:00 A.M. At the very least, the Officer's explanation amounted to an admission of carelessness and confusion at the suppression hearing. Even more importantly, if no such similar arrest occurred, it would entirely destroy the credibility of all the police testimony. We think his explanation, which stirred previous doubts and raised new ones, reasonably required inquiry and a fresh determination of the suppression issue. Accordingly, we remand the case for that purpose.[8] If suppression is granted, a new trial will be ordered. If suppression is denied, then the judgment of conviction shall stand, subject to appeal.

So ordered.

McGOWAN, Circuit Judge (concurring in the result):

In response to an inquiry during oral argument, counsel for appellant said that he had concluded, and believed that we should conclude, that the police version of the arrest in this case was a complete

---

1. See, e. g., Cogen v. United States, 278 U.S. 221, 224, 49 S.Ct. 118, 73 L.Ed. 275 (1929); Gouled v. United States, 255 U.S. 298, 312–313, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Anderson v. United States, 122 U.S.App.D.C. 277, 352 F.2d 945 (1965); see Jennings v. United States, 101 U.S. App.D.C. 198, 199, 247 F.2d 784, 785 (1957).

2. See DiBella v. United States, 369 U.S. 121, 129, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962): "[T]he legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light."

3. See McNabb v. United States, 318 U.S. 332, 346, 63 S.Ct. 608, 87 L.Ed. 819, (1943).

4. Ford & Kimble v. United States, 122 U.S. App.D.C. ——, 352 F.2d 927 (1965).

5. See, e. g., Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wrightson v. United States, 95 U.S.App. D.C. 390, 392, 222 F.2d 556, 558 (1955).

6. Cf. Ross v. United States, 121 U.S.App. D.C. 233, 349 F.2d 210 (1965).

7. Jackson v. United States, 122 U.S.App. D.C. 324, 330, 353 F.2d 862, 868 n. 15 (1965).

8. The District Court's disposition on remand may make it unnecessary to decide appellant's contention that the police testimony at the suppression hearing was "inherently incredible." See Jackson v. United States, *supra* note 7.

and conscious fabrication. His conclusion may or may not be right, but his identification of the issue is, in my view, wholly accurate. If the officers who testified about the arrest really did first encounter appellant in the alley and arrest him only after he had rid himself of narcotics in their full view, then the discrepancies between their stories are not of much moment. They take on great significance, however, if one believes that, as appellant claimed, he was stopped and searched as he was walking down the street outside the alley. And their significance is that they tend to suggest that the alley version was contrived to mask an arrest without cause.

Where the issue is, as here, one of crediting one witness rather than another, the trier who hears the live testimony is in the best position to reach a conclusion. This was the role assigned to the court which heard the evidence on the motion to suppress. If that court had clearly indicated that it had made its choice and had ruled finally and definitively on the motion to suppress, that would conclude the matter for me on this record; and I would affirm the judgment of conviction. But, after serious and repeated expressions of concern about the inconsistencies in the officers' testimony, the court proceeded to dispose of the matter with this statement:

"[T]he Court is going to deny the motion, and with a right to renew, of course, during the course of the trial, and you are appointed counsel.

"MR. KOONZ: Yes, I am, your Honor.

"THE COURT: And you can request the Court to make a forma pauperis order to have this matter transcribed, so that you will have a transcript at the time of the trial."

This is not, in the light of the doubts voiced earlier, the kind of language which suggests finality to me.[1] And, if renewal of the motion be regarded as contemplated or invited by the motions court, then the trial court could not be content, as it was, with simply reading the transcript of the pre-trial suppression hearing and regarding the ruling as the "law of the case." Appellant did not testify at the trial; and, as the trial court noted, only a hearing outside the presence of the jury would have sufficed if the earlier ruling was not intended to be final. To resolve properly an issue of credibility of the kind involved in this case, the judge who finally decides the suppression question must see and hear the clashing witnesses.

The question still remains: Who was telling the truth, appellant or the police? I concur in the remand in order that this question may finally be answered in the first instance by a trier who hears the witnesses.

---

[1]. It is admittedly difficult, out of context, to define with precision the impression of tentativeness which this ruling makes on the reader of the entire record, but it nonetheless persists. It is, of course, always possible to renew at trial a motion to supress, but it was not the purpose of Rule 41(e), FED.R.CRIM.P., customarily to countenance consecutive hearings and dispositions of the same issue, once before trial and once during, absent some new and unusual turn in the evidence at trial. The whole point of the pre-trial hearing of motions to suppress is to expedite the trial, even to the point of eliminating the need to hold one at all. This objective is, to say the least, obscured when the pre-trial hearing judge seems preoccupied with the prospect of the trial judge's taking a second look.