**Louis A. JENKINS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5806.**

District of Columbia Court of Appeals.

Submitted Aug. 16, 1971.

Decided Dec. 13, 1971.

As Amended Dec. 16, 1971.

Richard H. Ringell, appointed by this court, was on the brief, for appellant.

John A. McCahill, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and John F. Finnegan, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

After trial without a jury, appellant was convicted on informations charging petit larceny[1] and carrying a pistol without a license.[2] Presented on this appeal is a question of the reasonableness of police action in approaching, confronting, and interrogating a person on a public street after viewing his highly suspicious conduct and the constitutionality of a seizure of suspected proceeds of a theft where no victim had reported a loss. Appellant contends that his arrest on March 29, 1971, was without probable cause and that consequently a tape player seized at that time and a pistol seized two days later during the execution of an arrest warrant were both the fruit of an unlawful arrest which, on his motion, should have been suppressed. We conclude that the seizures of the tape player and the pistol were constitutional and therefore affirm.

The facts elicited at the pretrial motion to suppress are as follows: Officer Harvey, the only officer who testified at the hearing, and Officer Leak were assigned to duty in an area of the city in which there had been many complaints of larcenies from parked automobiles. In the afternoon of March 27, 1971, they observed appellant as he walked from a parking lot into an alley near 15th and O Streets, N. W. He was wearing what Officer Harvey recognized to be "jail" or "institution" clothing—i. e., a black peacoat, dungarees "with wide bottoms" and boots. During a period of from 45 to 60 minutes thereafter, the officers, who were dressed in casual clothes, observed appellant peering into automobiles as he walked about in the general area. Once he entered a private parking area near the Australian Chancery at 1601 Massachusetts Avenue, N.W., and a few minutes later crossed the street to a

---

1. D.C.Code 1967, § 22–2202.

2. D.C.Code 1967, § 22–3204.

public parking lot and, after conversing briefly with an attendant, borrowed a pair of pliers. Appellant then walked in a westerly direction in the 1500 block of O Street, N.W., and for a short time was not within the view of the officers, but was observed later in the same block walking in an easterly direction toward them.

At this point the officers confronted appellant, identified themselves and requested that he identify himself. Appellant's peacoat was buttoned and his hands were in or through the pockets of the coat. According to the testimony of Officer Harvey, "[h]is right pocket was out of the coat . . . because he was holding some kind of object under it." The officer testified that he demanded appellant remove his hands from his pockets, that appellant failed to respond and, because of his concern for safety, he conducted a search for a weapon. This search resulted in the disclosure that appellant was concealing beneath his coat a tape player, the connecting wires of which had been broken. Appellant explained that the player belonged to the parking lot attendant from whom the pliers had been obtained. While one officer detained appellant, the other officer went to the parking lot and inquired of the attendant respecting the tape player. The attendant disclaimed any ownership or knowledge of the tape player, saying that he had only loaned appellant a pair of pliers.

Appellant was then transported to a police precinct station where a record was made of the tape player as property believed to be the proceeds of crime. Appellant's name and address were recorded also, after which he was released. The tape player was retained by the police.

Shortly thereafter a report was received by the two officers that a tape player had been stolen from the automobile of Noel F. McFarland while it was parked at the rear of the Australian Chancery at 1601 Massachusetts Avenue, N.W. Mr. McFarland later identified the tape player seized from appellant as the one stolen from his automobile, after which a warrant was obtained for appellant's arrest and, upon its execution, the police seized from his person an operable pistol.

Officer Leak did not testify at the hearing on the motion to suppress. However, his affidavit in support of the arrest warrant was before the motions judge, was known to appellant prior to the motion and went unchallenged by him. Its contents revealed that Officer Leak saw a part of the tape player and its stripped wires when appellant fumbled beneath his coat, presumably for some means of identification and, in the process, a part of his coat was moved aside.[3]

█ We see nothing inherently incredible in the fact that one officer saw the tape player and ragged wires while the other officer did not. The Government must be afforded all legitimate inferences from the testimony and uncontroverted facts of record. Accordingly, we must view in the most favorable light evidence in the record from which the court could have found that the tape player came properly into view. *See* Ingram v. United States, 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); Hallman v. United States, 115 U.S.App.D.C. 350, 320 F.2d 669 (1963), cert. denied, 375 U.S. 882, 84 S.Ct. 154, 11 L.Ed.2d 113 (1963); Malloy v. United States, D.C.App., 246 A.2d 781, 782 (1968).

█ The question then is whether, within the purview of D.C.Code 1967, § 23–581(a) (1) (C), (2) (Supp. IV, 1971),[4]

---

3. At trial Officer Leak's testimony about seeing the player under the coat was consistent with his affidavit supporting the arrest warrant.

4. D.C.Code 1967, § 23–581(a) (1) (C), (2) (Supp. IV, 1971) provides:
   A law enforcement officer may arrest, without a warrant having previously been issued therefore— . . .

there was probable cause to arrest appellant after the initial confrontation. If so, it must follow that the seizure of the tape player, the issuance of the arrest warrant and the seizure of the pistol during its execution were proper.

Appellant relies principally upon the holdings of this court in Campbell v. United States, D.C.App., 273 A.2d 252 (1971) and Daugherty v. United States, D.C.App., 272 A.2d 675 (1971). Those cases, however, are distinguishable on their facts. In both *Campbell* and *Daugherty,* the prearrest conduct observed by police officers consisted of the open carrying of a television set and, in one case, the open carrying of a screwdriver by a companion.

It is clear from the record in the case now under consideration that appellant's conduct was at the very outset such as to arouse suspicion. That conduct culminated in extremely furtive actions when appellant would not remove his hands from inside his coat and continued to hold on to the object concealed inside. *See* Brooks v. United States, D.C.Mun.App., 159 A.2d 876, 879 (1960). Moreover, *Campbell* and *Daugherty* do not hold that the absence of a reported crime at the time of the investigation and seizure is determinative of the constitutionality of police conduct. *See also* United States v. Wallace, D.C.App., 283 A.2d 32 (No. 5882, decided November 1, 1971). Certainly these officers were required to investigate what they had seen. In fact, "it would have been poor police work indeed for an officer . . . to have failed to investigate this behavior

further." Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). *See also,* in this connection, Campbell v. United States, *supra;* United States v. Lee, D.C.App., 271 A.2d 566, 568 (1970); Wright v. United States, D.C.App., 242 A. 2d 833, 834 (1968).

While the facts within the officers' knowledge when they first confronted appellant established, at best, mere suspicion, when they observed the tape player, a type usually installed in automobiles, which he had been concealing beneath his coat, and observed also that broken wires were hanging from its connections, their suspicion was raised to the level of probable cause. *See* Brooks v. United States, *supra.*

We hold, therefore, that there is a sound basis in the evidence for the trial court's conclusion that there was probable cause for appellant's first arrest. It follows that the court did not err when it refused to suppress as evidence the tape player seized at the time of that arrest and the pistol seized at the time of the execution of the arrest warrant.

■ The fact that the trial judge entertained and ruled on a renewed oral motion to suppress made at the time the prosecution sought to have the player and pistol received as evidence requires comment by this court. When a pretrial motion to suppress has been heard and decided as required by Superior Court Criminal Rule 41(g) and D.C.Code 1967, § 23–104(a) (2) (Supp. IV, 1971),[5] that decision becomes the law of the case.[6] United States v. Jen-

(C) a person whom he has probable cause to believe has committed or is about to commit any offense listed in paragraph (2) and, unless immediately arrested, may not be apprehended, may cause injury to others, or may tamper, with, dispose of, or destroy evidence.
(2) The offenses referred to in subparagraph (C) of paragraph (1) are the following: . . .
Petit larceny . . . .

5. D.C.Code 1967, § 23–104(a) (2) (Supp. IV, 1971) provides:

A motion for return of seized property or to suppress evidence shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion.

6. Anderson v. United States, 122 U.S.App. D.C. 277, 352 F.2d 945 (1965), is not to the contrary particularly in light of D.C.Code 1967, § 23–104(a) (2) (Supp. IV, 1971). Nor is the holding in Cogen v. United States, 278 U.S. 221, 49 S.Ct 118, 73 L.Ed. 275 (1929), which decided the "sole question . . . wheth-

nings, 19 F.R.D. 311 (D.D.C.1956) (Holtzoff, J.), *judgment aff'd*, 101 U.S.App.D. C. 198, 247 F.2d 784 (1957). Only if new grounds, including new facts, are advanced which the defendant could not reasonably have been aware of may a trial judge entertain a renewed motion to suppress. *See* Rauh and Silbert, Criminal Law and Procedure: D.C.Court Reform and Criminal Procedure Act of 1970, 20 Am.U.L.Rev. 252 (1970–1971).

It must be remembered that section 23–104(a) (2) modified Fed.R.Crim.P. 41(e) in the District of Columbia and GS Crim. R. 41(e) which permitted "the [trial] court in its discretion [to] entertain the motion at the trial." The objectives of this modification of these rules are obvious. The Government has been given the statutory right of appeal when pretrial motions to suppress are granted. Therefore, the timing of the motion is essential to this right. Moreover, finality of most pretrial rulings on such motions will avoid the necessity of intra-trial prosecution appeals under D.C. Code 1967, § 23–104(b) (Supp. IV, 1971), which must be decided within 96 hours of adjournment of the trial for the appeal. In addition, we observe that, absent unusual circumstances, permitting reassertion of the pretrial motion will waste valuable time, relegate decisions on those motions to mere advisory or tentative opinions, and convert the motions hearings into nothing more than unpermitted depositions. Although the prosecutor did not object to the reassertion of the motion in this case, one would assume in light of section 23–104, *supra,* that the United States Attorney

er the [pretrial] order of the District Court [denying a motion to return papers and suppress] is a final [and thus appealable] judgment . . . ." *See* particularly the discussion, *id.* at 224–225, 49 S.Ct. at 118, describing the then nature of such motions under the prevailing rule of practice followed at that time. In view of the specific statutory treatment of appeals from orders respecting motions to suppress, of

would actively resist efforts to relitigate facts and legal issues already decided in his favor by a motions judge.

Affirmed.

the fact that on appeal from a conviction this court can review the correctness of a pretrial ruling, and of the fact that such motions are usually decided after evidentiary hearing and not on affidavits, we do not view as controlling in this context certain observations by Mr. Justice Frankfurter when speaking for the Supreme Court in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).