**UNITED STATES, Appellant,**

v.

**Mary Elizabeth DOCKERY, Appellee.**

**UNITED STATES, Appellant,**

v.

**Myra Annetha WITHERSPOON, Appellee.**

**Nos. 6249, 6250.**

District of Columbia Court of Appeals.

Argued March 15, 1972.

Decided June 23, 1972.

Rehearing Denied Aug. 30, 1972.

Ann S. DuRoss, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Lawrence T. Bennett, Asst. U. S. Attys., were on the brief, for appellant in both cases.

Robert M. Weinberg, Washington, D. C., with whom Robert E. Clem, Washington,

D. C., was on the brief, for appellee Myra A. Witherspoon.

Peter Weisman, Washington, D. C., with whom Stephen S. Millstein, Washington, D. C., was on the brief, for appellee Mary E. Dockery.

Before KERN, GALLAGHER, and REILLY, Associate Judges.

REILLY, Associate Judge:

Under a Congressional statute popularly known as the Jencks Act,[1] a defendant in a criminal prosecution may, after a witness called by the Government has testified on direct examination "in the trial of the case", obtain from the Government any statement or report such witness has previously made, provided the court after ordering the Government to produce such material, rules that the contents relate to the subject matter of the testimony of that witness. In the two cases consolidated here on appeal, the court below ruled that in hearings on pretrial motions to suppress evidence a defendant has the right to call for the production of such material when a prosecution witness has completed his direct testimony.

When these rulings were made, the Government refused to produce the requested documents for the inspection of defense counsel. The court then ordered struck from the record of each case, the testimony of the witnesses whose prior statements the Government decided to withhold,[2] and granted the motion to suppress. The Gov-

ernment thereupon noted an appeal and moved in this court for summary reversal of these orders, contending that the first subsection of the Jencks Act expressly makes pre-witness stand statements of persons testifying for the Government immune from discovery or inspection by the defendant "until said witness has testified . . . in the trial of the case".[3]

Because of the importance of the issue, we decided[4] to treat the Government's motion as its brief in both cases and accordingly called for briefs of appellees and oral argument by all parties. Although the challenged orders were made on successive days after separate hearings involving different defendants accused of wholly unrelated offenses, the sole question before us in the present posture of the cases is whether the term "trial of the case" as used in the Jencks Act should be read so narrowly that a defendant in a suppression hearing[5] is not entitled to the same rights in cross-examination conferred upon him by the Act in a formal criminal trial.

The setting in which this issue arose is very much alike in each of the cases before us. Both stemmed from warrantless arrests incident to the stopping of automobiles by police officers, and the subsequent discovery of contraband articles in such vehicles. In each instance counsel for the defendant filed a motion under Rule 41(g) of the Superior Court Criminal Rules alleging that the item on which the particular informations was based had been obtained by the police in circumstances amounting to an unlawful search and seizure. In the *Witherspoon* case, No. 6250, the object of

1. 18 U.S.C. § 3500 (1970).

2. When the Government elects not to comply with an order of the court requiring the delivery of a witness' prior statement or portion thereof to a defendant, the court is directed to strike the testimony of such witness under the provisions of subsection (d) of 18 U.S.C. § 3500.

3. 18 U.S.C. § 3500(a).

4. *See* D.C.Code 1967, § 23–104(a) (1) (Supp. V, 1972).

5. The rules of criminal procedure in both the Federal district courts and the Superior Court require a defendant who contemplates objecting to certain evidence in the Government's possession on the ground it was illegally obtained, to file a motion to suppress such evidence in advance of trial.

the suppression motion was a pistol; in *Dockery*, No. 6249, a quantity of heroin.[6]

At each hearing, the Government produced the officer who had made the arrest. At the first hearing—*Witherspoon*—the witness testified that he and another officer were in a scout car, which was overtaken and passed by another car bearing tags reportedly identical to those on a vehicle involved in an armed robbery. When such vehicle was flagged down, the officer stated that his fellow officer noticed a pistol lying in the rear of the car at appellee Witherspoon's feet and picked it up. Thereupon they arrested all the occupants of the car. After the prosecutor had completed his direct examination of this witness, defendant's counsel asked for the written arrest report of the officer.[7]

The Government objected. After hearing argument, the court overruled the objection. When the Government persisted in its position, the court struck the officer's testimony and granted the motion to suppress.

In the hearing on No. 6249, the arresting officer testified that an informant had told police that appellee Dockery was carrying drugs in a leather pouch about the size of a cigarette package, and pointed her out as she entered the rear door of an automobile. Pursuant to a radio call, the car in which Dockery was a passenger was stopped by other officers. When the witness appeared on the scene and the driver was being questioned, the former observed appellee place a "dark object" in a cardboard box next to her on the seat. She then was asked to produce her purse and to step out of the car. When she complied the officer reached inside, picked up the box and, according to his testimony, uncovered a leather pouch inside of which were nine tinfoil packages containing white powder.

Before cross-examining the witness, Dockery's counsel asked for the witness' P.D. 163. The same objection was advanced, and the same ruling made, culminating in an order to suppress.

■ This court has repeatedly held that fourth amendment rights are not violated when a policeman who has stopped an automobile because of a report of a law violation and subsequently has noticed a contraband object in plain view inside the car, then seizes and examines such object without a warrant even prior to making an arrest, *e. g.*, Davis v. United States, D.C. App., 284 A.2d 459 (1971), citing Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Thus it is clear that the testimony of the arresting officers in each of these cases, had such testimony stood unchallenged, would have compelled the court conducting the hearings to have overruled the motions to suppress. The most effective method of discrediting such testimony, of course, would be to discover and demonstrate that the police witness had previously described the incident in terms at variance with his testimony at the hearing. Plainly, defense counsel's ability to resort to this technique on cross-examination would be seriously impaired if the Jencks Act denied a defendant access at suppression hearings to official reports which would have been available to him if the Government called the same witness at the trial.

Despite this seeming unfairness, however, the Government contends that its construction of the Act would not be prejudicial to the defense in the long run. It points out that if prehearing statements of an adverse witness on the suppression motion are withheld, the defendant has an opportunity to inspect such statements at trial when the Government in offering the chal-

---

6. In No. 6250, the principal charge against the accused was carrying a pistol without a license in violation of D.C.Code 1967, § 22–3204. In No. 6249, the offense was defined as a violation of D.C. Code 1967, §§ 33–402, 22–3601.

7. Under routine practice of the Metropolitan Police Department, an officer making an arrest describes the incident on a form known as P.D. 163. This was the document counsel sought.

lenged item of evidence calls such witness to identify it. Should it then develop that such statements do in fact provide material for impeaching the witness, defense counsel could ask and expect the trial court to reconsider the previous adverse ruling on the motion to suppress.

We have some difficulty with this argument. For one thing, it seems to assume that the defense would be permitted in cross-examination to bring up matters not covered in direct examination at the trial, but in earlier testimony of the witness. Moreover it provides no adequate recourse if the Government at trial relies on witnesses other than those produced at the motions hearing. More importantly, it would seem to detract from the significance of pretrial rulings on defendant's chief objection to the evidence, for there could be no conclusive showdown on the suppression issue until the trial itself—thus defeating the very purpose of the rules requiring such an issue to be raised in advance whenever possible. Hence the position urged by the Government raises the spectre of repetitious evidence over the same issue in consecutive proceedings.

We have examined the legislative history of the Jencks Act to ascertain whether Congress intended any such incongruous result when it enacted this measure. Neither the committee reports nor the statements of the managers of the bill when it was debated disclose that Congress ever adverted to its possible impact upon pretrial suppression hearings. It is apparent that the purpose of the legislation was to incorporate into statutory criminal procedure a limitation on the decision of the Supreme Court in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), which held that in a prosecution for perjury, the defendant had a right to inspect prior statements given by Government witnesses to agents of the Department of Justice. The opinion was not precise as to the scope and timing of a defendant's right to call for the production

of such documents. As a result, a number of lower Federal courts started to grant pretrial subpoenas or motions for discovery which permitted defendants broad access to materials in Government files in advance of any testimony by prosecution witnesses. The new Act was drawn to prevent such "fishing expeditions" and yet to preserve for all defendants the essence of the actual right which the court had said should have been accorded the defense in the *Jencks* case.

So far as the issue now before us is concerned, one portion of the report of the Senate Committee on the Judiciary is illuminating—

One of the causes of misinterpretations is the fact that there appears to be great uncertainty as to when the statements of witnesses are to be produced and whether or not the statements should first be examined by the trial judge. *The committee is of the opinion, and the bill so provides, that statements of witnesses should not be subject to production until the Government witness, who is the putative source of such statements, has himself testified.* In other words, it is the specific intent of the bill to provide for the production of statements, reports, transcriptions or recordings, as described in the bill, after the Government witness has testified against the defendant on direct examination *in open court,* and to prevent disclosure before such witness has testified. . . . S.Rep. No. 981, 85th Cong., 1st Sess., 1957 U.S.Code Cong. and Ad. News, p. 1863. (Italics supplied.)

Certainly there is nothing in this statement of intent which supports the Government's narrow reading of the Act. A witness called by the prosecution in a suppression hearing is obviously testifying "in open court." The basic objective of the Act is not thwarted if at that point—the completion of his direct testimony—his cross-examiner can call for the production

of any prior statement of that witness on the subject of his testimony. It is also noteworthy that in keeping with the general spirit of the Act—notwithstanding its limitation to criminal prosecutions—the courts have generally held its disclosure provisions applicable to Government witnesses in administrative proceedings before an agency of the Federal Government. *See* Communist Party of United States v. Subversive Activities Control Board, 102 U.S.App.D.C. 395, 254 F.2d 314 (1958), aff'd on other grounds, 367 U.S. 1, 81 S. Ct. 1357, 6 L.Ed.2d 625 (1961). *See also* NLRB v. Adhesive Products Corp., 258 F.2d 403 (2d Cir. 1958); Raser Tanning Co. v. NLRB, 276 F.2d 80, 82–83 (6th Cir.), cert. denied, 363 U.S. 830, 80 S.Ct. 1601, 4 L. Ed.2d 1524 (1960); NLRB v. Winn-Dixie Stores, Inc., 341 F.2d 750, 753 (6th Cir.), cert. denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965).

■ Nevertheless the Government contends that in criminal cases its construction of the Act is supported by the weight of judicial authority. The only case in this jurisdiction that seems to have any bearing is a decision by a Federal district judge, Gibson v. Halleck, 254 F.Supp. 159 (D.D.C.1966), holding that the provisions of the Jencks Act do not apply to preliminary hearings. The rationale of that decision was that hearings of the kind drawn into issue in that case are usually conducted by magistrates in contradistinction to a "court", the word the statute uses. Under both the Federal and Superior Court rules of criminal procedure,[8] motions to suppress must be heard and ruled upon by judges. Thus even though such a hearing may be held before the formal trial commences, the transcript of the hearing becomes an integral part of the trial record.

More to the point are United States v. Montos, 421 F.2d 215 (5th Cir.), cert. de-

nied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed. 2d 532 (1970), and United States v. Covello, 410 F.2d 536 (2d Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969). There, United States Courts of Appeal in two different circuits held that by the express terms of the Jencks Act, the Government at pretrial hearings on suppression motions does not have to produce prior statements of its witnesses, even though such statements are ultimately subject to discovery at trial by virtue of the same statute. The authority of *Covello* even in the second circuit, however, is somewhat weakened by the court's refusal to overrule its previous decision in the *Foley* case,[9] where it had denied a writ of mandamus to vacate an order of a trial judge fixing a date for a pretrial suppression hearing and directing the Government to produce certain documents at that time for impeachment purposes. That case was distinguished on the ground that such compulsory disclosure was within the discretion of the motions judge—a rather odd doctrine, for it seems to permit the application of a statute to turn upon the views of an individual judge rather than upon authoritative construction based on language and legislative history.

The *Montos* opinion dealt only briefly with the Jencks Act question—one of several raised in the appeal in that case. Under review was a conviction for theft of various parcels in the mails. Appellant, seeking to prevent the Government from using these at the trial, had filed an unsuccessful pretrial motion to suppress and had vainly requested the written report of the postal inspector who had seized the stolen items. At trial, the motion to suppress was renewed. The trial judge then did make the report available in advance of cross-examination but found no circumstances which warranted his overturning the ruling on the pretrial motion. Noting that the Jencks Act gives defendants the

8. Fed.R.Crim.P. 41(e); Super.Ct.Crim. Rule 41(g).

9. United States v. Foley, 283 F.2d 582 (2d Cir. 1960).

ultimate right to call for disclosure at trial[1], the circuit court concluded that no such right was intended at an earlier phase of the proceedings. The court found no prejudice to appellant because "the Trial Judge afforded [him] every reasonable opportunity to present new evidence which might cast doubt on the pretrial ruling . . . ." [10] Plainly the effect of this holding relegates a decision emerging from a suppression hearing to the category of purely tentative.

The court itself seemed to recognize this weakness in its opinion, for in commenting upon the principle that ordinarily a defendant may not re-litigate the suppression issue at trial, the author of the opinion quoted with approval the observation of Judge McGowan of this circuit in Rouse v. United States, 123 U.S.App.D.C. 348, 351 n.1, 359 F.2d 1014, 1017 n.1 (1966):

. . . It is, of course, always possible to renew at trial a motion to suppress, but it was not the purpose of Rule 41(e) . . . customarily to countenance consecutive hearings and dispositions of the same issue, once before trial and once during, absent some new and unusual turn in the evidence at trial. The whole point of the pre-trial hearing of motions to suppress is to expedite the trial, even to the point of eliminating the need to hold one at all. . . . [11]

■ In any event, whatever may be said for the application of the rule announced in *Montos* and *Covello* in other jurisdictions, we are of the opinion that those decisions cannot be followed here without defeating one of the major objectives of an intervening act of Congress relating to criminal procedure in the District of Columbia courts. We refer to a 1970 amendment to our local code which grants the Government the right to appeal orders entered prior to trial suppressing evidence and at the same time providing that:

A motion for return of seized property or to suppress evidence shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion.[12]

As a result of this amendment, Rule 41(g) of the Superior Court Criminal Rules was adapted to modify the corresponding Federal rule so as to eliminate the discretion previously vested in judges to entertain suppression motions at trial.[13] It is clear that the objective of this amendment was to accord conclusiveness at the trial court level to pretrial rulings on motions to suppress by equating such rulings with final orders for purposes of appeal. Accordingly, unless appealed, the disposition of a pretrial motion on a suppression issue would seem necessarily binding on the trial judge should the motion be renewed subsequently, if the objective of the Congressional amendment is to be given full effect.

■ This view has already been expressed by this court. In Jenkins v. United States, D.C.App., 284 A.2d 460 (1971), we emphasized that a decision on a pretrial motion to suppress must be deemed the law of the case for purposes of the trial, unless the objection to receiving the disputed exhibits into evidence is based upon facts of which the defendant was unaware and could not have reasonably known at the time of the motions session.

It is plain, however, that the *Jenkins* decision would raise serious questions of

---

10. United States v. Montos, *supra*, 421 F. 2d at 221.

11. *Id.* at 220 n. 3.

12. D.C.Code 1967, § 23–104(a) (2) (Supp. V, 1972).

13. United States district courts still retain such discretion by reason of Fed.R.Crim. P. 41(e).

due process, if we should hold that impeaching material available to defendants under the Jencks Act at trial is immune from production at a hearing on a pretrial motion filed in accordance with Rule 41 (g). Accordingly, we affirm the challenged rulings, but without prejudice to the right of the Government to move to vacate the orders and reopen the hearings, if it is prepared to proffer the written reports previously requested and withheld.

Affirmed.

Before REILLY, Chief Judge, and KERN and GALLAGHER, Associate Judges.

ORDER DENYING REHEARING

PER CURIAM.

Upon consideration of the Petition for Rehearing in the above-entitled cases, and it appearing that no substantial issue was raised not previously considered by this court, it is hereby

Ordered: The petition for rehearing and reconsideration is denied, with the following clarification:

In order to prevent pretrial discovery of the identity of prosecution witnesses the petition, in the alternative, requests this court to clarify its opinion by stating that when the Government is ordered to produce documents deemed relevant under the Jencks Act the material made available to the defense should exclude the names and addresses of Government witnesses other than those testifying at the hearing.

Nothing in our original opinion, however, was intended to impair the obligation of trial courts under 18 U.S.C. § 3500(c) to excise from the statement of a witness prior to its delivery to the defendant any portions of such statement not relating to the subject matter of his direct testimony.