## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2018, 10:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles Richardson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 7, 2018

Court of Appeals Case No.
18A-CR-1533

Appeal from the Marion Superior Court

The Honorable Amy M. Jones, Judge

The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G08-1611-CM-44422

**Brown, Judge.**

[1] Charles Richardson appeals his conviction for possession of a handgun without a license as a class A misdemeanor. He raises two issues on appeal which we consolidate and restate as whether the trial court abused its discretion in admitting certain evidence. We affirm.

## Facts and Procedural History

[2] On November 16, 2016, the State charged Richardson with carrying a handgun without a license as a class A misdemeanor. On April 25, 2017, Judge Amy M. Jones held a hearing, and Richardson's counsel made an oral motion to suppress based upon the Fourth Amendment and asserted that "there would not be a reasonable articulable suspicion that there was grounds to do a [T]erry stop and frisk prior to a pat down being conducted in this situation."[1] Transcript Volume II at 6. The prosecutor indicated that she was ready to move forward with a suppression hearing. Indianapolis Metropolitan Police Officer Shane Nicholsen testified that he was in the area of 16th and Arlington in Marion County on November 15, 2016, ran the license plate of the vehicle in

---

[1] The Transcript lists:

Bench Trial
Before the Honorable David Hooper & Amy Jones
Magistrate of the Marion County Superior Court, Criminal Court 8
Date: April 25, 2017, May 30, 2017, June 8, 2018

Transcript Volume II at 2 (capitalization omitted). While the Transcript does not reveal the specific judicial officer, an entry dated April 25, 2017, in the chronological case summary ("CCS") lists Amy M. Jones as the judicial officer.

front of him, and found that the registration was expired. He testified that he asked the driver, Richardson, to step out of his vehicle and Richardson complied, "began to face" him, and "turned his back to like the wedge between the door and the vehicle facing" Officer Nicholsen. *Id.* at 10. He stated that he asked Richardson if he had anything on him and Richardson "just kept questioning like, 'Well, why do you need to know this?'" *Id.* He testified that Richardson changed his position when he asked him if he could pat him down and Richardson also "kind of had like a stance trying to get closer to the car and away from me." *Id.* at 11. He stated that Richardson's failure to answer him caused him concern for his safety; and that he and another officer told Richardson to place his hands on the vehicle to do a pat-down, Richardson eventually complied, and the officers felt a hard object between Richardson's hip and his appendix area which turned out to be a "ruger forty caliber." *Id.* at 12. Officer Nicholsen stated that between thirty seconds and a minute passed from the time of the stop until he asked Richardson if he had anything on him, and that the area was a high crime drug trafficking area.

[3] On cross-examination, Officer Nicholsen indicated that Richardson was fully cooperative when he was in the car, had a valid license, and immediately exited the vehicle when asked. When asked if the only reason why he asked Richardson to exit the vehicle was so he could tow it due to the expired plates, Officer Nicholsen answered: "I actually hadn't even made my mind up if I was going to tow it. I just wanted to talk to him about the vehicle and see where to go from there." *Id.* at 14. When asked if he had any reason to believe

Richardson was armed or dangerous when he asked him to do the pat down, Officer Nicholsen answered: "Not initially. No." *Id.* He testified that Richardson did not move towards him in a threatening manner. The following exchange then occurred:

> Q He wasn't staring you down or anything like that. Correct? I should clarify. He wasn't staring you down. Correct?
>
> A I mean he was looking at me.
>
> Q Okay.
>
> A So I don't know if staring me down.
>
> Q In an aggressive manner?
>
> A He was nervous, I mean, I wouldn't say.
>
> * * * * *
>
> Q Is it fair to say that his argument with you and him moving away from you are the two reasons that you wanted to do the pat down?
>
> A I would argue that – I would just say that based upon his positioning in the wedge of the vehicle kind of wanting to stay away from me along with the constant questioning of why we needed to check him. It's just been in my experience that if he didn't have anything on him and he didn't mean any harm to anything then he would just go ahead and just check real quick and then we can talk.

*Id.* at 16. On redirect examination, Officer Nicholsen testified that he initially asked Richardson if he had anything on him, and Richardson did not "answer the question yes or no." *Id.* at 18.

[4]     On May 30, 2017, Judge Jones continued with the hearing.[2] Indianapolis Metropolitan Police Officer Michael McWhorter testified that he arrived at the scene to back up Officer Nicholsen, that Officer Nicholsen informed him that Richardson's license plate was expired and that he was going to go back to Richardson's vehicle to speak to him about it, and that Richardson complied when asked to step out of the vehicle. The following exchange occurred:

> Q  Did [Richardson] do any – make any actions?
>
> A  What I recall is the defendant bladed his body to his right side near the entrance of his vehicle. Like if you're standing at the car facing the officer, his right side was still inside the door way.
>
> Q  And you've been an officer for four years. Is that correct?
>
> A  That's correct.
>
> Q  Is there a way that you would describe if someone is positioning themselves like that? What would that tell you as an officer?
>
> A  Usually that's a fighting stance for me. So I'm trained in fighting skills. If someone blades their body, most people are right handed in this world. So that's taking a fighting stance for me personally.
>
> Q  So what happened next?
>
> A  Officer Nicholsen asked the defendant again if he could pat him down for any weapons and he told the gentlemen [sic] to

---

[2] A CCS entry dated May 30, 2017, lists Amy M. Jones as the judicial officer.

turn around and put his hands on top of the vehicle, which he advised us that he would not do that.

Q  What did Officer Nicholsen do after the defendant advised him he would not turn around and put his hands on the hood?

A  He asked him several more times to do it.  At that point, I looked at Officer Nicholsen and he looked at me and we decided that he was going to have to ask him one more time that physical means were going to be taken at that point.

Q  And did you have to resort to physical means?

A  We did not.

Q  So the defendant eventually complied?

A  Yes, he did.

*Id.* at 30.

[5]  On cross-examination, Officer McWhorter testified that the conversation discussing the pat-down was over the course of about thirty seconds to a minute and that he did not recall any yelling.  The court took the matter under advisement.

[6]  On June 29, 2017, the court entered an order denying Richardson's motion to suppress.  Specifically, the order, which was signed by Judge Jones, states in part:

3.  Because there was no other occupant in the car, and the expired nature of the license plate and registration, Officer

Nicholson[3] asked [Richardson] to exit the vehicle. [Richardson] stepped out of the vehicle and remained standing between the open driver's side door and the driver's side of the vehicle. Officer Nicholson testified that [Richardson's] movement was such that it suggested he was trying to stay away from the officer and appeared to present himself in a "fighting stance".

Officer Nicholson testified that whenever he has someone exit a vehicle, he conducts a pat down search for officer safety. Officer Nicholson had not yet made a decision as to whether or not to tow the vehicle when he asked [Richardson] to step out of the car to discuss the matter further. When Officer Nicholson asked [Richardson] if he could proceed with the pat down and whether or not he had anything on his person that might harm the officer, [Richardson] did not initially respond, appeared nervous and began questioning the officer as to why he needed to conduct a pat down search. Officer Nicholson testified that he asked to perform the pat down at least three (3) times. The first time, [Richardson] responded with "no", and each subsequent time, [Richardson] argued about why the pat down was necessary.

4. Officer Nicholson testified that [Richardson's] argumentative behavior as well as what the officer perceived as an attempt by [Richardson] to avoid contact with the officer, heightened the officer's concern for his personal safety. Additionally, the officer testified that the area in which the traffic stop was made is known to be a high crime area. At this time, Officer Nicholson told [Richardson] to put his hands on the car to which [Richardson] complied. A pat down search of [Richardson] produced a handgun located on his hip. [Richardson] did not have a license to carry the handgun.

5. Officer Michael McWhorter, arrived on scene at the traffic stop and served in a back-up capacity. He testified as to

---

[3] The spelling of the officer's name in the trial court's order differs from the transcript.

[Richardson's] positioning of himself inside the wedge of the driver's doorway in an attempt to "blade" himself in what appeared to be a "fighting stance". Officer McWhorter also testified regarding [Richardson's] denial of consent to a pat down search as well as him being nonresponsive to Officer Nicholson.

* * * * *

9. In reviewing the totality of the circumstances in this case, Officer Nicholson testified that whenever he has someone exit a vehicle, he conducts a pat down search for officer safety. However, in this instance, the Court further considers the following factors described by the officer: [Richardson's] overall nervous demeanor including his refusal to answer questions, his argumentative responses and evasive positioning of his body away from the officer in what was described as a "fighting stance". The Court finds that the additional observations made by the officer constitute the requisite articulable facts to support his reasonable belief that [Richardson] was armed and dangerous under the circumstances. Therefore, the Court finds that the officer acted reasonably under the circumstances and that a pat down search of [Richardson] was appropriate and the subsequent finding of the handgun on [Richardson's] person was lawful.

Appellant's Appendix Volume II at 58-62.

[7] On June 8, 2018, Judge David Hooper held a bench trial. At the beginning of the trial, the court asked the parties if they had any preliminary matters, and Richardson's counsel stated: "No, Your Honor. Just to let the Court know that I think this Trial will be very quick because it's already been heard on a suppression issue that has already been denied and we're just going to move to incorporate that." Transcript Volume II at 40. The court stated: "Go off the record briefly." *Id.* The court and parties went "OFF RECORD," then back

"ON RECORD," and the court stated: "All right. Back on . . . Richardson. It sounds like both parties are ready to go. State, call your first witness." *Id.*

[8] Officer Nicholsen testified that he conducted a BMV check of a license plate, found that the registration was expired, conducted a traffic stop, and met Richardson. He testified that he obtained Richardson's license, went back to his car, and ran his information, "still trying to check to make sure the vehicle is still expired through different channels. It was." *Id.* at 42. He testified that he and Officer McWhorter asked Richardson to step out of his car, Richardson complied but "kind of became a little argumentative and questioning the reason for the stop and things of that such," which was "[n]ot necessarily" an uncommon conversation. *Id.* at 43. He stated that Richardson positioned himself between the door and the doorframe. Officer Nicholsen stated that he asked Richardson if he had any weapons on him and if he cared if he conducted a pat-down. When asked about Richardson's response, Officer Nicholsen answered: "I mean just kind of – I can't recall exactly, but didn't really answer the question and was asking me questions about stuff." *Id.* at 44. He testified that he conducted a pat-down search. Richardson's counsel then objected, asserted that Richardson's rights were violated under both the Indiana Constitution and the United States Constitution, and moved to incorporate the testimony form the suppression hearing that was held on "April 30th, 2017."[4]

_____

[4] The suppression hearings were held on April 25, 2017, and May 30, 2017.

*Id.* The court stated: "Incorporating stuff because it was the presiding Judge that did it and I'm the magistrate. Is there something that came out in the suppression that you want on the record besides what I've already heard?" *Id.* at 45. Richardson's counsel stated: "I would like to move to incorporate because I think that there were things that were said at the suppression hearing I don't know that they'll necessarily be the same things that are answered today. That suppression hearing was taken over a year ago and I think the testimony at that time was a lot more fresh in the officers [sic] mind." *Id.* The court stated: "Well, like I said this is Bench – we're showing Bench Trial here and I can't incorporate what I didn't hear in making my decision. So what I'll do is I'll let you ask preliminary questions and you can make." *Id.*

[9] Upon questioning by defense counsel, Officer Nicholsen indicated that he did not have any reason to believe Richardson was armed while he was in the vehicle, Richardson was fully cooperative with him, he had a valid driver's license, he had not made any furtive movements while he was in the vehicle, he did not agree to the pat-down, and he took one step back towards the wedge of the door, but did not make any furtive movements with his hands. When asked if he was arguing with him for about thirty seconds before Richardson took that step back, Officer Nicholsen answered: "Roughly, yeah." *Id.* at 48. Defense counsel asked: "You weren't going to take no for an answer?" Officer Nicholsen answered: "At that point, it was concerning. I'd rather be safe." *Id.* Officer Nicholsen testified that "we asked him and told him and then we kind of helped guide him and put his hands on the car and then we just kind of did

the pat down really quick and then at that point the gun was felt." *Id.* at 49. The court overruled Richardson's objection and denied the motion to suppress.

[10] Upon questioning by the prosecutor, Officer Nicholsen testified that he conducted a pat-down of Richardson's outer layer of clothing and felt a gun at his hip. Officer Nicholsen stated that he placed Richardson in handcuffs, removed the gun, walked back towards his car, and read Richardson a *Miranda* warning. Officer Nicholsen indicated that he asked Richardson if he had a valid gun permit and Richardson stated that he did not.

[11] After the questioning of Officer Nicholsen, the following exchange occurred:

> [Defense Counsel]: . . . I would just – I think we forgot to also address moving to final decision on incorporating the evidence from the suppression hearing regarding the officer in the suppression hearing.
>
> THE COURT: Okay. I will incorporate it, but I can only make a INAUDIBLE interpretation of what I'm hearing –
>
> [Defense Counsel]: I understand, Judge.
>
> THE COURT: - today, but for whatever that means then it will be incorporated.
>
> [Defense Counsel]: Thank you.

*Id.* at 55-56. The court found Richardson guilty as charged.

### *Discussion*

[12] The issue is whether the trial court abused its discretion in admitting the testimony and evidence regarding the gun. Generally, we review the trial

court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008); *see also Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (holding that the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*).

[13]   Generally, in ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Carpenter*, 18 N.E.3d at 1001. If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014). It also considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. *Carpenter*, 18 N.E.3d at 1001.

[14] We note that the State points to testimony from the suppression hearing and the trial. In his reply, Richardson argues that the State improperly relies on evidence not incorporated or admitted at trial to form the basis of its argument. Even assuming that Richardson did not waive this argument by raising it for the first time in his reply brief, we cannot say reversal is warranted.

[15] In *Magley v. State*, which is cited by Richardson, the St. Joseph Circuit Court overruled a motion to suppress the defendant's statement. 263 Ind. 618, 626, 335 N.E.2d 811, 816 (1975), *overruled on other grounds by Smith v. State*, 689 N.E.2d 1238 (Ind. 1997). At the trial in the Marshall Circuit Court, the defendant objected to the introduction of his statement, and the court conducted a hearing outside the presence of the jury and ruled the statement was admissible. *Id.* at 626, 335 N.E.2d at 816-817. On appeal, the Indiana Supreme Court addressed both the pre-trial ruling and the in-trial ruling. *Id.* at 626-639, 335 N.E.2d at 817-823. The Court set forth guidance for the trial judge who is faced with a trial objection to a confession previously determined to be admissible:

> As a backdrop to proper consideration of this matter, it should be kept in mind that, in these situations, the State has already successfully met the issues raised in the challenge and shown beyond a reasonable doubt the voluntariness of the waiver and statement. When a simple objection for the purpose of preserving appellate rights is made, the trial judge should consider the pre-trial determination res judicata and binding

upon him and overrule the objection.[5] If, however, the trial objection is based upon new factual or legal matter, a simple overruling of the objection would not be appropriate. In that instance, the trial judge may expect, and indeed require, that he be provided with an accurate summary description of such new matter. Thereafter, either of two levels of judicial response is appropriate. The trial judge may summarily overrule the objection if the new matter could in no event result in a determination of inadmissibility. This summary disposition may be made upon consideration of counsel's description, or, in the discretion of the judge, after having permitted the defense to call witnesses, to present its new matter. On the other hand, if the trial judge deems such new matter to be of sufficient substance, he may conduct a hearing on the motion to suppress, having a scope appropriate under the circumstances, and reconsider the issue of admissibility. *Gasaway v. State* (1967), 249 Ind. 241, 231 N.E.2d 513. In *Rouse v. U.S.*, 123 U.S. App. D.C. 348, 359 F.2d 1014, (1966), the D.C. Court of Appeals identified the nature of new matter which would call for a further hearing, as matter first appearing at trial which casts 'reasonable doubt on the pre-trial ruling.'

Where, as in the case at bar, the judge who conducts the trial is not the judge who conducted and determined the pre-trial motion, obstacles to a full and fair reconsideration at trial exist. The trial judge is not acquainted with the evidence presented in the pre-trial hearing. Consequently, he is unable to weigh the old evidence with the new. This problem does not arise, of course, where the trial judge makes a summary denial of the objection based upon an inadequate showing of substantial new matter.

---

[5] In *Joyner*, the Indiana Supreme Court discussed the statement in *Magley* that "the trial judge should consider the pre-trial determination res judicata and binding upon him and overrule the objection." 678 N.E.2d at 392 (quoting *Magley*, 263 Ind. at 634-635, 335 N.E.2d at 821-822). The *Joyner* Court held that this statement was not intended to be literally applied and "was used to succinctly inform trial judges that they need not necessarily rehear evidence and arguments relating to admissibility issues previously heard and determined during pre-trial proceedings." *Id.* at 393.

> Neither does the problem arise when the new matter would provide an independent and sufficient ground for suppression, as in the case at bar. The problem would exist, where the trial judge deemed it appropriate to reopen an issue litigated and finally determined at the pre-trial stage, for, in such instances, reweighing of the new and old evidence as a body would be required. In such extreme cases, re-litigation of the motion to suppress is indicated. A transcript of the pre-trial hearing may or may not be used in such re-litigation, depending upon, for instance, whether the credibility of a single witness or existence of a single fact is undermined by the new matter. In such cases, the balance of the transcript, unrelated to that witness or that fact, might well serve in lieu of the live testimony of the State's suppression witnesses.

*Id.* at 634-635, 335 N.E.2d at 821-822.

[16] Here, at the beginning of the trial, the court asked the parties if they had any preliminary matters, and Richardson's counsel stated: "No, Your Honor. Just to let the Court know that I think this Trial will be very quick because it's already been heard on a suppression issue that has already been denied . . . ." Transcript Volume II at 40. We note that, contrary to Richardson's assertion that the testimony at the suppression hearing was not incorporated or admitted at trial, Richardson's trial counsel brought up the issue of incorporating the evidence from the suppression hearing and the trial court ultimately stated that it would incorporate it. We also note that the court had the benefit of the June 29, 2017 order denying Richardson's motion to suppress. Under these circumstances, we conclude that this Court may consider the evidence from the suppression hearing that does not conflict with trial evidence.

[17] Richardson does not challenge the initiation of the traffic stop or Officer Nicholsen's request that he exit his vehicle. Rather, he challenges the prolonging of the traffic stop and the pat-down under the Fourth Amendment and the pat-down under Article 1, Section 11 of the Indiana Constitution.

A. *Fourth Amendment*

[18] Richardson argues that Officer Nicholsen unlawfully prolonged the traffic stop beyond the time reasonably required to complete the mission of the stop. He also argues that, although an officer is allowed to ask a driver to exit a vehicle during a traffic stop, Officer Nicholsen did not have a reasonable suspicion that he was armed and dangerous. The State argues that Richardson waived any challenge to the stop itself because he made no such argument to the trial court and that specific and articulable facts warranted Officer Nicholsen's reasonable concern for officer safety.

[19] The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

[20] To the extent Richardson asserts that Officer Nicholsen unlawfully prolonged the stop, we note that Richardson did not object at trial on this basis and did not respond in his reply brief to the State's argument that he has waived this argument. We conclude that Richardson has waived this argument. *See Mullins v. State*, 646 N.E.2d 40, 44 (Ind. 1995) ("In order to preserve a claim of trial

court error in the admission or exclusion of evidence, it is necessary at trial to state the objection together with the specific ground or grounds therefor at the time the evidence is first offered. . . . Failure to state the specific basis for objection waives the issue on appeal.") (internal quotation and citations omitted).

[21] Waiver notwithstanding, we cannot say reversal is warranted. In *Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609, (2015), the United States Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 135 S. Ct. at 1612. Indiana Code § 34-28-5-3 provides that an officer may detain a person for a time sufficient to inform the person of the alleged infraction and obtain the person's personal information, including name, address, date of birth, and identification, if any. Ind. Code § 9-18.1-11-2 provides that "a person that owns or operates a vehicle may not operate or permit the operation of a vehicle that: (1) is required to be registered under this chapter; and (2) has expired license plates."

[22] When asked how long it took from the time he stopped Richardson to when he asked him to see what was on him, Officer Nicholsen answered between thirty seconds and a minute. When asked if the only reason why he asked Richardson to exit the vehicle was so he could tow it due to the expired plates, Officer Nicholsen answered: "I actually hadn't even made my mind up if I was going to tow it. I just wanted to talk to him about the vehicle and see where to go from there." Transcript Volume II at 14. We conclude the officer did not

extend the stop beyond the duration necessary to investigate the infraction. Richardson has failed to demonstrate a Fourth Amendment violation on this basis.

[23] As for Richardson's second argument, to conduct a pat-down during a *Terry* stop, an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968). "In addition, a police officer 'justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' is entitled to conduct a limited patdown [sic] search of the suspect's outer clothing to search for a weapon." *Jackson v. State*, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996) (quoting *Terry*, 392 U.S. at 24, 88 S. Ct. 1868).

[24] The record reveals that Officer Nicholsen testified at trial that Richardson did not answer his question regarding the pat-down, did not agree to the pat-down, and instead asked him questions. Richardson's counsel asked Officer Nicholsen, "This was basically during a confrontation when he just stepped out of the vehicle?" Transcript Volume II at 47. Officer Nicholsen answered affirmatively. Officer Nicholsen also testified that Richardson took one step back and his demeanor was argumentative. No evidence at the bench trial conflicted with Officer Nicholsen's testimony at the suppression hearing that Richardson was nervous or that the area was a high crime drug trafficking area. Richardson does not point to any evidence conflicting with Officer

McWhorter's testimony at the suppression hearing that Richardson "bladed his body" which constituted a "fighting stance." *Id.* at 30.

[25] Under these circumstances, we conclude the pat-down was not a violation under the Fourth Amendment and the court did not err in admitting evidence discovered as a result of the pat-down. *See Lockett v. State*, 747 N.E.2d 539, 543 (Ind. 2001) (holding that an officer's question of whether the defendant had any weapons was justified by police safety concerns and it did not materially extend the duration of the stop or the nature of the intrusion and the officer's questions were not unreasonable under the Fourth Amendment), *reh'g denied*.

B. *Indiana Constitution*

[26] Richardson argues that the evidence was obtained in violation of his rights under Article 1, Section 11 of the Indiana Constitution. The State argues that Richardson waived this issue because he presented no argument or separate analysis under the Indiana Constitution to the trial court. It also argues that, waiver notwithstanding, the pat-down was reasonable. In reply, Richardson asserts the he did not waive his argument because he raised the Indiana Constitution before the trial court and asserted that the search was unlawful because the officer lacked reasonable suspicion under the Indiana Constitution and the trial court noted his objection under the Indiana Constitution.

[27] Even assuming Richardson did not waive this issue, we cannot say reversal is warranted. Article 1, Section 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[28] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). "When a defendant raises a Section 11 claim, the State must show the police conduct 'was reasonable under the totality of the circumstances.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1205-1206 (Ind. 2008), *reh'g denied*). Generally, "[w]e consider three factors when evaluating reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[29] With respect to the degree of suspicion, we observe that Richardson does not challenge the initial stop, he refused to answer Officer Nicholsen's question regarding the pat-down, stepped back, was nervous and argumentative, and bladed his body. The intrusion into Richardson's privacy was minimal as it was merely a pat-down of his "outer layer of clothing and feel for weapons . . . ." Transcript Volume II at 50. Finally, the law enforcement needs were high given the circumstances leading to the pat-down. Under the totality of the

circumstances, we conclude that the search was reasonable and did not violate Richardson's rights under Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[30] For the foregoing reasons, we affirm Richardson's conviction.

[31] Affirmed.

Bailey, J., and Bradford, J., concur.