Joyce Elaine WHEELER, Appellant,

v.

UNITED STATES, Appellee.

Jeannette Beatrice WAINWRIGHT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 6542, 6543.

District of Columbia Court of Appeals.

No. 6543 Argued Oct. 16, 1972.

No. 6542 Submitted Jan. 10, 1973.

Decided Feb. 27, 1973.

William Scott Bradbury, Arlington, Va., appointed by this court, for appellant Wheeler.

Fred Grabowsky, Washington, D. C., appointed by this court, for appellant Wainwright.

Jason D. Kogan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Richard L. Beizer and Craig M. Bradley, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge:

Appellants were charged by informations with possession of desoxyn in violation of D.C.Code 1967, § 33–701(1)(A), and of the implements of crime (narcotics paraphernalia) in violation of D.C.Code 1967, § 22–3601. Motions to suppress, made on behalf of both appellants, were subsequently denied pretrial and again at trial and appellants were ultimately acquitted of the first charge and convicted of the second. They argue on appeal that it was error to admit in evidence the narcotics paraphernalia upon which their convictions rest because of an illegal search and seizure. We reverse and remand for a new suppression hearing.[1]

Officer Robert Edwards of the Metropolitan Police testified on the motions to suppress that on the evening of October 24, 1971, he and his partner, Officer Cooper, received a radio run for persons using narcotics at 44 Bryant Street, N.W. They proceeded to that address where they were met by two unidentified men, one of whom stated that he had seen two people sticking needles in each other's arms. He led the officers to the door of a third floor apartment where Officer Cooper knocked on the door. The door, held by a chain, was opened three or four inches and a voice from inside asked who was there. Officer Cooper replied that they were police officers and asked if anyone inside had called the police. The same voice then said "wait a minute", and after approximately forty-five seconds the door was opened by appellant Wheeler. Officer Edwards testified that at this point he was able to see a syringe and cooker in front of a television set on a table located six to eight feet from the door of the well-lit room. After he stepped inside the room, he noticed appellant Wainwright sitting on a bed to the left of the television. Both occupants were placed under arrest.

Appellant Wheeler, lessee of the premises, testified that when the police knocked she repeatedly denied having called for them and that after she opened the door the officers immediately entered and began searching through the contents of a trash can, several drawers, and behind the television where narcotics paraphernalia was found. She said that none of the evidence was seized from in front of the television or from any other place where it could have been visible from the doorway. The motions judge nevertheless denied the motions to suppress without opinion.

At trial, the testimony of Officer Edwards varied in some respects from that given at the pretrial hearing. He stated at trial that he was met by one man at the door of 44 Bryant Street, while at the hearing he said he was met by two men. At trial, he stated that when the door to the room in which appellants were arrested was opened a few inches, while still held by a chain, he was able to see a cooker on the table. At the hearing on the motions, he specifically disclaimed being able to see anything until the door was fully opened. Still another inconsistency developed in the testimony concerning his entrance into the room. At the hearing on the motions, he stated that having seen the cooker from the hallway, he "took it for granted that somebody was using narcotics in the apartment",[2] and stepped inside. At trial, he testified that when appellant Wheeler opened the door he asked if he could come

1. Because of the disposition we make here it is unnecessary to discuss appellant Wainwright's contention that there was insufficient evidence to show her constructive possession of the paraphernalia

2. R. at 13.

in, and "she backed off as if it was okay and to motion us in."[3]

On cross-examination of Officer Edwards, defense counsel inquired into the contents of some Police Department 163 forms, prepared by Officer Edwards and his partner shortly after appellants' arrests, in which both officers had stated:

> "*After stepping in,* notice narcotics on the table."[4]  [Emphasis supplied.]

Counsel also called the court's attention to the statement in the government's points and authorities in opposition to the pretrial motions to suppress that the

> [o]fficers arrived at the scene and met the caller of the report who informed them that the narcotics were to be found in room 304 behind the television set.[5]

No testimony to this effect was given either at the hearing on the motions or at trial, nor was the identity of the informer made known.

When the government sought to have the narcotics paraphernalia admitted into evidence, defense counsel renewed the motions to suppress on the basis of the additional information contained in the P.D. 163s indicating that the paraphernalia was not seen until after the officers entered the room.  Counsel asserted that the police forms were not made available by the government at the time of the hearing on the motions and that they therefore constituted new information upon which the trial court could reconsider the suppression issue in accordance with *Jenkins v. United States,* D.C.App., 284 A.2d 460 (1971).

It is not clear on the record whether or not the trial court construed the officers' statements in the P.D. 163s as consistent with their in-court testimony.  When defense counsel argued, from the forms' contents, that the officers had to enter the room in order to see the paraphernalia, the court remarked: "It does say that after going in he noticed it, but it does not say he had to go in to see it."[6]  However, the court refused to reconsider the suppression issue with the following explanation:

> Well, perhaps I didn't make myself clear . . . but I did not state that the Court viewed Jenkins as rigidly prohibiting the trial Court from considering the question of suppression.  I think there are circumstances where it would be fully justified, but the Court does not feel that this is such a case. . . .[7]

■ We note initially that "[w]hen a pretrial motion to suppress has been heard and decided as required by Superior Court Criminal Rule 41(g) and D.C.Code 1967, § 23–104(a)(2) (Supp. IV, 1971), that decision becomes the law of the case.  Only if new grounds, including new facts, are advanced which the defendant could not reasonably have been aware of may a trial judge entertain a renewed motion to suppress." [8]

We also note, however, that the hearing on the motions and the trial took place prior to our decision in *United States v. Dockery,* D.C.App., 294 A.2d 158 (1972), where we held that under the Jencks Act "a defendant in a criminal prosecution may, after a witness called by the Government has testified on direct examination" during a suppression hearing, "obtain from the Government any statement or report such witness has previously made, provided the court after ordering the Government to produce such material, rules that the contents relate to the subject matter of the testimony of that witness." *Id.* at 159.  In construing the Jencks Act to apply to pretrial suppression hearings, the court noted

3. R. at 67.

4. R. at 74.

5. R. at 75–76.

6. R. at 93.

7. R. at 93.

8. Jenkins v. United States, D.C.App., 284 A.2d 460, 463–464 (1971).  [Citations omitted; footnotes omitted.]

that the most effective method of discrediting police testimony "would be to discover and demonstrate that the police witness had previously described the incident in terms at variance with his testimony at the hearing." *Id.* at 160.

■ Thus it appears that at the time the motions to suppress were heard in this case the government was not obligated to provide defense counsel with P.D. 163s after direct testimony by police officers. When, therefore, these forms became available at trial, after the government's direct examination of the police officer, and disclosed an inconsistency in the officer's testimony which was crucial on the issue of his credibility and the validity of the seizure of evidence,[9] this constituted "new grounds, including new facts . . . which the defendant could not reasonably have been aware of" as contemplated by Jenkins v. United States, *supra*, 284 A.2d at 464. In our judgment, therefore, the trial judge should have entertained renewed motions to suppress.

While it seems unlikely, it may be that the court did not consider the P.D. 163s to be in conflict with Officer Edwards' testimony and for that reason refused to give de novo consideration to the question of suppression. There was no ruling to that effect however and, under the circumstances, in light of this and other inconsistencies in the officer's testimony and of the critical importance of the officer's credibil-

ity, we hold that a remand to the trial court for a "fresh determination of the suppression issue"[10] is necessary.

Reversed and remanded.

---

9. It is clear that if the articles were visible from the doorway, the officer had a right to seize them under the plain view doctrine. United States v. Thweatt, 140 U.S.App.D.C. 120, 433 F.2d 1226 (1970) ; Creighton v. United States, 132 U.S.App.D.C. 115, 406 F.2d 651 (1968). If, however, he did not see them until he entered, a question arises as to whether his entry was consensual or, if not, whether he had adequate grounds to make a non-consensual, warrantless entry. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Additionally "[a] pre-trial ruling on a motion to suppress does not bind the trial judge in all circumstances. New facts,

new light on the credibility of government witnesses, or other matters appearing at trial may cast reasonable doubt on the pre-trial ruling. It then becomes the duty of the trial judge to consider de novo the issue of suppression . . . .

"The courts are particularly sensitive to new matters concerning a search incident to a warrantless arrest. . . . " Rouse v. United States, 123 U.S.App.D.C. 348, 349–350, 359 F.2d 1014, 1015–1016 (1966). [Footnotes omitted.]

10. Rouse v. United States, *supra* note 9, at 350, 359 F.2d at 1016; Kinard v. United States, D.C.App., 288 A.2d 233, 236 (1972).