Quinton R. ASBELL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 14163, 79–1275.

District of Columbia Court of Appeals.

Argued Oct. 29, 1980.

Decided Sept. 9, 1981.

Robert F. O'Neill, Asst. U.S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U.S. Atty., and John A. Terry, Michael W. Farrell, and Genevieve Holm, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before KELLY, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant, Quinton R. Asbell, of robbery, D.C. Code 1973, § 22–2901, and second-degree burglary, *id.* § 1801(b).[1] After noting an appeal and receiving new appointed counsel, appellant requested, and was denied, a new trial based on a claim of ineffective assistance of counsel. Although many issues have been raised on appeal, most coverage in a basic question: whether appellant's counsel, whom the trial court found grossly incompetent, prejudiced appellant to the extent of denying him the essence of a substantial defense. We conclude that counsel's gross incompetence had this effect. We further conclude, however, that this case does not warrant dismissal for lack of a speedy trial; nor does it warrant reconsideration of suppression issues raised—and disposed of favorably to the government—in connection with the effectiveness claim. We thus reverse and remand the case for a new trial.

I.

On September 17, 1975, at approximately 4:00 p. m., two men entered Randolph E. Appenzeller's trailer, put a gun to his head, then beat, hog-tied, and robbed him of his wallet, keys, ring, and surveying and other equipment. Two days later police arrested appellant for possessing the stolen property. On April 28 and 29, 1976, appellant, then age 17, was tried as a juvenile for receiving stolen goods, D.C.Code 1973, § 22–2205. He

Barry H. Gottfried, Washington, D.C., with whom Lawrence H. Schwartz and Barbara Kammerman, Washington, D.C., were on brief, for appellant.

1. In addition, appellant's indictment contained the following counts: armed robbery, D.C.Code 1973, §§ 22–2901, –3202; assault with a dangerous weapon, *id.*, § –502; second-degree burglary while armed, *id.*, §§ 1801(b), –3202; grand larceny while armed, *id.*, –2201, –3202; and grand larceny, *id.*, –2201. The government moved to dismiss the two grand larceny charges prior to trial.

was acquitted. Less than a month later, police executed a warrant for appellant's arrest, this time charging participation in the armed robbery itself. On the same day, May 18, 1976, the court appointed counsel for appellant. He remained in custody until July 22, 1976, when he was released on bond. Appellant was indicted on January 26, 1977, and arraigned two weeks later. Largely due to "court congestion" and "institutional factors," appellant was not tried until July 17 and 18, 1978.[2]

At trial, Appenzeller identified appellant as one of the robbers and as the individual he had seen in court two years earlier at appellant's trial for receipt of stolen goods.[3] In addition, Edward Massey, Appenzeller's co-worker, testified that he had seen one of the robbers in custody when the police had called him to identify the stolen property. Although Massey stated that he had been sure of his identification at the time, after three years he "couldn't swear that [appellant was] the same guy." He did indicate, however, that appellant looked similar to the individual he had earlier identified. The government then called Sergeant Thomas G. James to testify that appellant had been in police custody when Massey had identified the stolen property and claimed to have recognized one of the robbers. Finally, the government called Detective Lorren D. Leadmon, who testified that appellant, after being arrested and advised of his rights on September 19, 1975, admitted he had gone with the robbers on September 17 but insisted he had stayed in the car while two others had robbed Appenzeller.

Appellant was the only witness for the defense. He denied participation in the robbery. He also denied having made any statement about the robbery to Detective Leadmon. On cross-examination, appellant testified that on the afternoon of September 17, he had been at home with his mother. He claimed that he remembered this day because it was his nephew's birthday. Also on cross-examination, appellant described his activity on September 19. The prosecutor impeached this latter testimony with statements appellant had made at his earlier trial. In addition, the prosecutor was able to impeach appellant's testimony that he had never seen Appenzeller before the day of the second trial, for Appenzeller had testified against appellant at his first trial. See note 3 supra.

On July 19, 1978, the jury found appellant guilty of robbery and second-degree burglary, while acquitting him of the other charges. On November 13, 1978, the court committed appellant under the Federal Youth Corrections Act. 18 U.S.C. § 5010(b) (1976). He noted an appeal. This court appointed new counsel, who filed a motion for a new trial alleging ineffective assistance of counsel, in violation of Sixth Amendment rights. The court heard the motion on September 24 and 25, 1979, and denied it on November 9, 1979. The court concluded that, although appellant's trial counsel had been grossly incompetent, his incompetence "ha[d] not caused the defendant actual prejudice by blotting out the essence of a substantial defense." Consolidated before us now are the appeals from the trial and the denial of the new trial motion.

## II.

Appellant bears a heavy burden in attempting to show violation of his Sixth Amendment right to effective assistance of counsel. In *Angarano v. United States*, D.C.App., 312 A.2d 295, 298 n.5 (1973), *rehearing denied*, 329 A.2d 453 (1974) (en banc), we adopted the test of *Bruce v. United States*, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967), that, to establish an ineffective

2. The trial court attributed seven weeks of this delay, however, to defense counsel's failure to appear because of illness and conflicting schedules.

3. Appenzeller had testified at appellant's earlier trial, identifying the stolen property. Because appellant was tried at that time only on the receiving charge, the court did not permit Appenzeller to identify appellant as one of the individuals who actually had committed the robbery, although Appenzeller told the court he would be able to make such an identification.

assistance claim, a defendant must show "both that there has been gross incompetence of counsel and that this in effect blotted out the essence of a substantial defense either in the District Court or on appeal." *Id.* at 339–40, 379 F.2d at 116–17 (footnotes omitted). *See, e. g., Tillery v. United States,* D.C.App., 419 A.2d 970, 972 (1980); *Johnson v. United States,* D.C.App., 413 A.2d 499, 502 (1980); *Wright v. United States,* D.C.App., 387 A.2d 582, 586 (1978). Thus, it is not enough for appellant to show that trial counsel was grossly incompetent; appellant also must show a casual relationship between that incompetence and the failure of the defense.[4]

▮ In determining whether trial counsel's performance blotted out the essence of a substantial defense we apply a "totality of the circumstances" test. *Tillery, supra* at 973 (quoting *Oesby v. United States,* D.C.App., 398 A.2d 1, 8 (1979)). Thus, even though any one specific error by counsel may not constitute ineffective assistance, "the totality of the omissions and errors" may be sufficient. *United States v. Hammonds,* 138 U.S.App.D.C. 166, 173, 425 F.2d 597, 604 (1970). In reviewing this totality of circumstances, moreover, we are not limited to considering only the loss of affirmative defenses; ineffective attack on the government's case-in-chief may result in unconstitutional deprivation of counsel. As we recently stated in *Johnson v. United States, supra:*

> A "substantial defense" . . . is not limited to an affirmative defense or the presentation of an alibi defense. A defense may be predicated upon disproving an element of the crime charged or simply discrediting the testimony of the prosecution witness. A substantial defense would be lost, for example, if defense counsel failed to use available prior perjury convictions to impeach the sole prosecution witness, or to use prior inconsistent statements which sharply undercut the witness' credibility. Such failures could "blot out" a substantial defense even where it would be entirely appropriate for the defense to put on no evidence at all of its own. The defense may rely on the presumption of his innocence and on the government's obligation to prove each and every element of an offense beyond a reasonable doubt. [*Id.* at 504–05 (citations omitted).]

### III.

▮ The trial court's conclusion that appellant's counsel had been grossly incompetent was based on the following findings of fact:

1. Trial counsel failed to conduct a full interview with the defendant to determine all relevant facts known to the defendant.

2. Trial counsel failed to keep the defendant informed of his case or prepare him adequately for trial.

3. Trial counsel failed to conduct a prompt investigation of the case and failed to interview any of the witnesses called by the government.

4. Trial counsel failed to engage in any meaningful discovery with the government with regard to the facts of this case.

5. Trial counsel failed to engage in any meaningful plea discussions with the prosecutor.

---

4. For example, in *Wright v. United States, supra* at 585–87, we rejected appellant's claim of ineffective assistance of counsel, pointing out that even if trial counsel had conducted a more thorough investigation leading him to potential new witnesses, counsel, for tactical reasons, would not have used these witnesses. They would only have corroborated the accuracy of records which placed appellant in a halfway house near the time of the robbery. Trial counsel had decided not to introduce these records for two reasons: part of the time for which appellant was shown to have signed out of the halfway house corresponded to the time of the robbery; and introduction of the records would have alerted the jury to appellant's criminal background. Thus, even if counsel's failure to locate the witnesses constituted gross incompetence, this failure could not be said to have affected the conduct of appellant's trial. *See also Williams v. United States,* D.C.App., 374 A.2d 885, 888–90 (1977) (no ineffective assistance of counsel in failure of counsel to present alibi witness, where substance of alibi's testimony would probably have done appellant more harm than good).

6. Following the verdict, trial counsel did not submit favorable information to the court for purposes of sentencing.

7. Trial counsel apparently has not retained any records with regard to this case.

We agree that the record supports these findings, as well as the conclusion that trial counsel was grossly incompetent—determinations which the government does not contest. In order to evaluate whether counsel's gross incompetence prejudiced appellant, we examine the course of the trial in greater detail.

A. *"Trial counsel failed to conduct a full interview with the defendant to determine all relevant facts known to the defendant."*

At the hearing on the new trial motion, trial counsel acknowledged that he only had interviewed his client in hallways and courtrooms when both were required to be at the courthouse for some other purpose. Counsel stated that all he had learned from these interviews was appellant's claim that he had not been present at the robbery. Appellant testified that his counsel never asked him about a possible alibi. In response, counsel testified that he could not recall whether he had asked his client about an alibi.[5]

As result of trial counsel's failure to interview his client in depth, counsel learned of appellant's alibi claim for the first time while the prosecutor was cross-examining appellant. Counsel never had interviewed the witness who appellant claimed would have provided him with an alibi—appellant's mother. Thus, he did not call her to the stand. Nor did counsel mention an alibi in either his opening or closing statement. It is true that at the hearing on the motion for new trial in September 1979, appellant's mother acknowledged she no longer could remember whether her son was with her on September 17, 1975, the day of the robbery, and intimated that she could not have remembered even if the hearing had been held at the time of the arrest in May 1976.[6]

5. The exchange between appellate and trial counsel on this point illustrates that trial counsel was uncooperative at the hearing:

[Appellate counsel (AC):] Did he [appellant] tell you that he was with anybody else at the time the robbery was alleged to be committed?
[Trial counsel (TC):] No.
\* \* \* \* \* \*
[AC:] Did you ask him? Yes or no, did you ask him whether he was with anyone else at the time the robbery is alleged to have occurred? You can answer yes or no, sir, can't you?
[TC:] Yes.
[AC:] You asked him that, and his response was what?
[TC:] I don't recall my words to him.
\* \* \* \* \* \*
[AC:] The question is did you ask Mr. Asbell the names of any alibi witnesses whom he was with at the time the robbery was alleged to have occurred?
[TC:] I don't know whether I asked him that question as you have phrased it.
\* \* \* \* \* \*
[AC:] Did you ask him that question or that question in substance?
[TC:] I may have asked him where he was at the time.
\* \* \* \* \* \*

[AC:] Did you ever ask him whom he was with, for the fifth time?
[TC:] I don't recall, because that was a long time ago.
\* \* \* \* \* \*
[AC:] Did you take notes when you talked to him about his defense?
[TC:] Yes, I certainly would have, at the time that I was preparing for trial.
[AC:] Where are those notes today?
[TC:] I don't know.
Even before this particular exchange occurred, the trial judge stated, "for the record, so it will be clear[:] I have never seen a more reluctant witness than you are. You are purposely trying to avoid answering these questions."

6. The record is ambiguous as to whether appellant's mother could not remember the events of September 17, 1975 at the time of the motion hearing in September 1979, or could not remember them earlier, at the time of appellant's arrest for robbery in May 1976. The exchange between the prosecutor and appellant's mother at the motion hearing took place as follows:

[Q.] Mrs. Bookurn, I think I was asking you if on the day that Ricky [appellant] called you and told you that he had been arrested in May of 1976, if you remembered at that time any of the specific events of September 17th, 1975?
[A.] No I don't.

She did testify, however, that her grandson had had a birthday party on September 17, 1975; thus, she partially corroborated appellant's testimony that he remembered he was at home on the day of the robbery because it was his nephew's birthday.

In closing argument, the prosecutor reminded the jury, without defense objection, that appellant had not called his mother as a witness, despite his claim that she provided him with an alibi. This statement by the prosecutor highlighted the harm to appellant by his own counsel's failure to discover the alibi defense and call appellant's mother to the stand, even for the limited corroboration she could have provided.

B. *"Trial counsel failed to keep the defendant informed of his case or prepare him adequately for trial."*

Trial counsel admitted that he never prepared his client with sample cross-examination and could recall preparing him for direct examination only by asking "what he would say about the matter," in reply to which "[h]e said he wasn't there." Counsel's own glaring lack of preparation became evident at trial when in full view of the jury, during appellant's testimony on redirect, counsel asked the court if he could consult with his client. The request was denied.

Unprepared, appellant became confused under cross-examination as to the dates of the alleged incident and his arrest. Moreover, he testified that he had never seen Appenzeller before trial, only to be impeached by the fact that Appenzeller had testified against him at his earlier juvenile hearing. As indicated earlier, when appellant testified that he had been at home with his mother on the day of the robbery, he did so for the first time under the adverse conditions of cross-examination, rather than during his opening testimony. Even with adequate preparation, of course, appellant

might have been impeached and the consistency of his story attacked. But here, his total lack of preparation made appellant look especially weak in withholding his alibi until cross-examination; and he was particularly easy prey for the government's sharp questions on cross-examination.

C. *"Trial counsel failed to conduct a prompt investigation of the case and failed to interview any of the witnesses called by the government"; and "[t]rial counsel failed to engage in any meaningful discovery with the government with regard to the facts of this case."*

By his own admission, trial counsel read the police report of the robbery for the first time while the trial was in progress. Moreover, he admitted that he never interviewed any of the government's witnesses, even though the prosecutor had offered him the opportunity for discovery.[7] Furthermore, although counsel knew the government had a written statement allegedly made by his client, he neither obtained the statement nor filed a motion to suppress it. Finally, despite being appointed more than two years before appellant's trial, counsel learned only on the morning of trial that his client had been tried and acquitted as a juvenile for receiving the same stolen property for which he presently was charged with robbery. Counsel remained ignorant in spite of the fact that the Affidavit in Support of an Arrest Warrant contained the relevant information.

As a result of trial counsel's lack of investigation, he learned for the first time at trial that the complaining witness had identified his client at the juvenile hearing. Thus, counsel never took advantage of the prior testimony of this witness for impeachment purposes, despite the fact that he

---

7. During trial, when the court expressed concern that counsel had engaged in no discovery, the prosecutor informed the court that counsel had failed to take advantage of his invitation to come to his office to discuss the case. Al-

though the prosecutor could not remember his exact words to trial counsel, he stated that he had had the transcript of the juvenile proceedings for some time in his office.

could have used this testimony to question the certainty of his identification.[8]

Counsel's failure to apprise himself of the facts of appellant's juvenile hearing became evident to the jury at least by the second day of trial. After the government had completed its cross-examination of appellant, having seriously impeached him with the use of his statements at the earlier proceeding, defense counsel asked for a five minute recess to review the documents on which the government had relied. Despite the fact that counsel had been supplied with these documents the day before, he told the court, "I haven't seen them." Responding to the court's question whether he denied having received the documents the previous day, counsel stated:

> I said I haven't seen it recently. I didn't finish my statement. I said I haven't seen it. I am not aware of the contents of it at the moment. I don't know what he is talking about. That's the problem. I'm sorry.

Counsel received a few minutes to read the transcript, without a recess, in front of the jury.

D. *Trial Counsel's performance, "blotted out the essence of a substantial defense."*

■ Given the "totality of the circumstances," *Tillery, supra* at 973; *Oesby, supra* at 8, the trial court erred in concluding that, although trial counsel was "grossly incompetent" (which the government does not contest), he "has not caused the defend-

ant actual prejudice by blotting out the essence of a substantial defense." *See Angarano, supra* at 298 n.5; *Bruce, supra* at 339–40, 379 F.2d at 116–17. On this record, that statement is inherently contradictory. As a result of counsel's failure to conduct a full client interview to investigate the case, to engage in meaningful discovery, or to prepare appellant adequately for trial, appellant received no defense whatsoever.[9]

We begin by noting the government's evidence was not so strong that minimally competent counsel, performing elementary defense responsibilities, could not have precipitated an acquittal. Appenzeller identified appellant in court as one of the robbers, but Massey was not certain and Sergeant James could not confirm for sure that Massey had identified appellant earlier. Detective Leadman testified that appellant had admitted being present at the scene, but appellant, taking the stand in his own defense, denied he had ever said so. On cross-examination, moreover, appellant offered an alibi. The jury, therefore, was confronted by a typical case of strong but not conclusive evidence against appellant.

Any defense effort, to be successful, had to discredit Appenzeller's identification and to refute appellant's alleged admission to Detective Leadman. Significantly, both avenues at least had some promise. The weakness of Appenzeller's previous identification of appellant at the juvenile hearing was classic impeachment material for discrediting the in-court identification over two years later. *See* note 8 *supra.* Coun-

---

8. At the juvenile hearing, Appenzeller described the robbery in terms that question his ability to identify appellant. He stated:

> And I was on the telephone inside by myself. And two gentlemen—two fellows walked in and they asked me a few questions while I was on the phone, and I wasn't paying that much attention to them. And them I hung up the phone. And as I did that, my back was to them and one of them stuck a gun in my back and said it was a holdup.

9. In our analysis of ineffectiveness we do not factor in the trial court's findings 5, 6, and 7 that trial counsel "failed to engage in any meaningful plea discussions," "did not submit favorable information to the court for purposes

of sentencing," and "apparently has not retained any records with regard to this case."

As to plea bargaining, we agree with the implication of the trial court's finding that counsel has a responsibility at least to acquaint the client with the possibility of plea bargaining so that the client, given the strength of the case, can choose the course in his or her best interest. The court's finding that counsel failed to engage in meaningful plea bargaining, therefore, is simply a comment on counsel's default in performing the lawyer's traditional role. It is in no respect a finding that counsel, on this record, should have encouraged an offer of a plea under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), let alone a guilty plea.

sel, however, altogether failed to attempt such impeachment. Counsel, in fact, failed even to discuss Appenzeller's juvenile hearing testimony with appellant, a lapse obviously contributing to appellant's own testimony—for which he was impeached—that he had never seen Appenzeller before the present trial.

Despite the weakness of appellant's alibi—his principal defense against his admission alleged by Detective Leadman—appellant still did have an alibi defense which to some extent his mother could have corroborated. *See* Part III. A. *supra.* Counsel, however, learned about the alibi for the first time during his client's cross-examination and even then did not call the mother (whom he never had interviewed) at least to testify that her grandson had a birthday on September 17, 1975—a fact appellant asserted as part of his alibi. This lapse by counsel not only weakened appellant's alibi defense but also gave the government an opportunity, in closing argument, to remind the jury that appellant had not called his mother to testify, despite claiming she could provide significant corroboration.

Taken together, these two lapses—failures to contest the government's case with available impeachment, *see Johnson, supra* at 505, and to present appellant's alibi defense—"blotted out the essence of a substantial defense." *See Angarano, supra* at 298 n.5; *Bruce, supra* at 339–40, 379 F.2d at 116–17.

We recognize that when a record shows that counsel has performed fundamental criminal defense functions, though with a grossly incompetent lapse, the defense bears a substantial burden to show that the lapse, on the particular record at issue, materially lessened the opportunity for acquittal. *See Wright, supra* at 585–87; note 4 *supra.* This heavy burden is justified by the fact that when counsel performs these functions—a comprehensive client interview, investigation, discovery from the government, and preparation of the client for trial—the court ordinarily can perceive a cogent defense strategy against which the alleged lapse can be measured.

When, however—as here—counsel's gross incompetence is virtually a default in fundamental defense functions, a court can be less sure that counsel's lapse did not materially lessen the opportunity for acquittal, for the court is evaluating the impact of gross incompetence without any objective reason for assuming that sensible tactical judgments underlay counsel's basic approach. *See Wright, supra* at 585–87; note 4 *supra.* In this situation, therefore, a court confronted with gross incompetence must be much more cautious in permitting itself to conclude that no substantial defense has been blotted out. As in this case, the failure to use available impeachment of a key government witness, as well as to present the defendant's affirmative defense, is enough to warrant our conclusion that counsel's gross incompetence blotted out the essence of a substantial defense. Were we to conclude otherwise, we would be substituting ourselves for a jury deprived of material defense evidence that was available to defense counsel at the time of trial. We cannot properly do so.

The trial court did not evaluate counsel's gross incompetence from this perspective. In fact, the court focused primarily, if not solely, on the facts supporting appellant's affirmative defense, without due regard to the potential defense attack on the government's case-in-chief (e. g., Appenzeller's identification). Accordingly, we cannot accept the trial court's analysis. Appellant's conviction must be reversed for violation of his Sixth Amendment right to effective assistance of counsel.

IV.

Three issues remain: whether reversal mandates dismissal of the indictment for violation for appellant's Fifth Amendment right to due process (based on preindictment delay), or of his Sixth Amendment right to a speedy trial; and, if not, whether on remand for a new trial appellant should be permitted to file a motion to suppress his statement to the police and his identification by the complaining witness.

## A. *Due Process*

Appellant was arrested for robbery and burglary in May 1976, eight months after the incident giving rise to the charge (and one month after his acquittal for possession of stolen property based on the same incident). The court appointed counsel on the day of arrest. Appellant was indicted eight months later in January 1977. On appeal, he alleges that this 16-month preindictment delay—analogous to deprivation of the right to a speedy trial—violated due process.

■ The Supreme Court has acknowledged the validity of a number of reasons why the government may wish to proceed cautiously with arrest and/or indictment, most notably the concern that a person not be charged without conscientious scrutiny of the facts. *United States v. Lovasco*, 431 U.S. 783, 791–95, 97 S.Ct. 2044, 2049–2051, 52 L.Ed.2d 752 (1977). Thus, preindictment delay is not inherently unfair. To prevail on this argument, appellant must show at a minimum that he actually was prejudiced by the delay and that the government's reasons were unjustified. *Lovasco, supra* at 790, 97 S.Ct. at 2048; *Smith v. United States*, D.C.App., 414 A.2d 1189, 1194 (1980); cf. *United States v. Alston*, D.C. App., 412 A.2d 351, 359 (1980) (en banc) (applying a similar analysis to appellate delay).

In the present case, the government's reasons for deferring arrest and indictment for robbery and burglary until after appellant's acquittal on the possession-of-stolen property charge are not self-evident; no reason appears as to why the government may have needed time to develop additional evidence. On the other hand, no unseemly motives can be ascribed to the government on this record. Nor has appellant shown prejudice from pre-arrest or pre-indictment delay. He was incarcerated for only two months during this period, and he has not been able to demonstrate that, but for such

delay, he could have provided a credible alibi witness, *see* note 6 *supra*, or other defense. Nor is there a basis to believe that competent, new counsel for the defense will be prejudiced by this particular lapse of time. On this record, therefore, we perceive no due process violation.

## B. *Speedy Trial*

■ The speedy-trial issue is more complex. Appellant was not brought to trial until 18 months after indictment and 26 months after arrest for robbery and burglary.[10] Because this delay between arrest and trial was more than a year, appellant has established a prima facie Sixth Amendment violation. *Branch v. United States*, D.C.App., 372 A.2d 998, 1000 (1977). Accordingly, the burden has shifted to the government to prove that no constitutional violation has occurred, using the criteria prescribed in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–2193, 33 L.Ed.2d 101 (1972): length of delay, reasons for delay, assertion (or nonassertion) of the right, and prejudice.

### 1. *Assertion of the Right*

Although each of these factors is important, the Court stated in *Barker* that "barring extraordinary circumstances," it would be extremely reluctant to find a speedy trial violation when there has been no timely assertion of the right. *Id.* at 536, 92 S.Ct. at 2194. Such assertion not only is important in itself but also is significant for its relationship to the other three factors.

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to com-

---

10. As indicated above, appellant had been arrested on September 19, 1975, two days after the incident, for receiving stolen property. He was acquitted on April 29, 1976. Appellant was then arrested for robbery and burglary, based on the same incident, on May 18, 1976, indicted on January 26, 1977, and brought to trial on July 17, 1978.

plain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. [*Id.* at 531–32, 92 S.Ct. at 2192.]

This court, accordingly, has placed great emphasis on assertion of the right. For example, in *Jefferson v. United States*, D.C. App., 382 A.2d 1030, 1032 (1978), we noted: "To the extent that prejudice may be presumed from the existence of unresolved charges with the attendant anxiety and concern, this inference is substantially weakened by appellant's failure to assert his right to a timely trial . . . ." *Accord, Smith v. United States*, D.C.App., 379 A.2d 1166, 1167 (1977). Similarly, in *Day v. United States*, D.C.App., 390 A.2d 957, 973 (1978), the failure of the accused to demand a speedy trial was a significant factor in our conclusion that a delay which had extended beyond 32 months had not deprived the accused of his constitutional right to a speedy trial. In contrast, in *Bethea v. United States*, D.C.App., 395 A.2d 787, 792–93 (1978), and in *United States v. Ellis*, D.C. App., 408 A.2d 971, 973 (1979), we emphasized assertions of the right in reversing the convictions for speedy trial violations.

In this case, appellant did not demand a speedy trial, and yet he cannot be penalized for the failure of incompetent counsel to do so. *See Barker, supra* 407 U.S. at 536, 92 S.Ct. at 2194.[11] Accordingly, as we apply the other three factors, we must be alert to whether competent counsel could have been expected to request an earlier trial.

---

11. Appellant's former counsel testified that he had made a tactical decision not to demand a speedy trial after concluding that appellant had a weak case that could only be helped by delay. Even if counsel did make such a decision, his failure to investigate the case, *see* Part III. *supra*, made the decision an uninformed one.

12. Until the beginning of the second trial, appellant apparently was not aware that he had been charged with a crime different from the one for which he had been acquitted as a juvenile.

### 2. *Length of Delay*

Computation of the length of delay begins with the date of arrest. *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam). Here, appellant was arrested for armed robbery in May 1976, 26 months before trial. He had been arrested eight months earlier for receiving stolen property in the same transaction, a fact suggesting that, in the absence of manifest reasons why the government brought charges sequentially instead of concurrently, the significant date for calculating delay was September 19, 1975, 34 months before trial.[12] We do not resolve whether calculation should begin from May 1976 or September 1975; solely for the sake of argument we assume a 34-month period.[13]

### 3. *Reasons for Delay*

The reasons for the government's eight-month delay between arrest and indictment for robbery and burglary are no more clear than the reasons for the previous eight-month delay between arrests. *See Part IV. A. supra*; note 10 *supra*. Although there is no evidence that the government acted on the basis of improper motives, there is also no evidence that the government needed this additional time to develop its case. Accordingly, these initial periods of delay are chargeable to the government. Even after indictment, the 18-month delay before trial was substantial and, aside from seven weeks, *see* note 2 *supra*, was due to "court congestion" and "institutional factors" attributable to the government (though weighed less heavily than purposeful delay).

---

13. If September 19, 1975 is the significant date for speedy trial purposes, the Fifth Amendment due process claim would drop out of this analysis in favor of the Sixth Amendment speedy trial claim. *See* Part IV. A. *supra*; *cf. Branch v. United States, supra* at 1000 (delay measured from point of arrest despite 4½ month period between dismissal of first indictment and bringing of second indictment).

*Barker, supra* 407 U.S. at 531, 92 S.Ct. at 2192; *Day, supra* at 965.

### 4. *Prejudice*

In *Barker, supra*, the Supreme Court "expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (per curiam). Moreover, in holding that a delay of more than a year established a prima facie Sixth Amendment violation, *Branch, supra* at 1000, we established that such delay must be presumed prejudicial, and that the longer the delay, the heavier the government's burden will be to prove the contrary. *Id.* Nonetheless, we also have held that the government can meet this burden without introducing independent evidence. *Day, supra* at 971. "The government is entitled to argue both the objective facts of record and inferences to be drawn from a defendant's failure to assert particular prejudice." *Id.* Thus, although the government has the burden of proof here, we must acknowledge that if the defendant can point to no prejudice— and can show no other reason why competent counsel would have asserted the right to an earlier trial—the government will have met its burden; such "significant delay alone, chargeable to the government but not the result of a deliberate effort to obtain a tactical advantage," does not violate the Sixth Amendment right to a speedy trial. *Id.* at 973.

A court is forced to rely on presumptions of prejudice from delay as such, discounted by counter-inferences of no prejudice when none is alleged, because of the practical difficulty of proving or disproving prejudice in most cases. When a key witness dies or evidence is lost, prejudice may be obvious; but when a witness's memory allegedly fades, or an appellant allegedly would have been better able to prepare the defense if he or she had not been incarcerated, the court necessarily is in a realm of speculation. *See Barker, supra* 407 U.S. at 532, 92 S.Ct. at 2192; *Branch, supra* at 1002.[14]

In this case, we have the problem of faded memory. The only concrete example of prejudice from delay is the asserted inability of appellant's mother to remember whether he was at his nephew's birthday party on September 17, 1975, the day the robbery occurred. Although she could confirm that the birthday was September 17, it is at best unclear whether, if appellant had received a speedier trial, his mother could have remembered whether he had been at the party. There is reason to doubt she could have remembered even as early as April or May 1976, when appellant was tried on the stolen property charge. *See* note 6 *supra*.[15] Furthermore, one of the government's witnesses, Massey, was not altogether sure of his identification of appellant at trial. If trial had been held earlier, it is just as likely that Massey would have been more, not less, positive in his identification.[16] Because appellant made no other specific allegations of prejudice, we conclude that the government has met its burden to show no reasonable possibility that appellant was prejudiced by the lengthy delay before trial. *See Day, supra* at 973.

---

**14.** As the Supreme Court stated in *Barker, supra* 407 U.S. at 532, 92 S.Ct. at 2193: the loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown."

**15.** This conclusion—that it would be too speculative to find prejudice, for speedy trial purposes, from the mere possibility that appellant's mother could have verified he was home on September 17, 1975, if trial had been held earlier—does not detract from our conclusion that whenever the trial took place, competent counsel could have made favorable use of the mother's other testimony (coupled with other

attacks on the government's case) to present a substantial defense. *See* text following note 6 *supra*.

**16.** In contrast to other rights of the defendant, delay in bringing a defendant to trial may work to his advantage. The defense, in fact, may make a tactical decision to delay the trial as long as possible in the hope that memories will fade. *See Barker, supra* 407 U.S. at 521, 92 S.Ct. at 2187; *Smith, supra*, 414 A.2d at 1195 ("14-month delay could easily have worked to appellant's advantage by causing the child's memory to fade").

### 5. Conclusion as to Speedy Trial

■ Although the incompetence of trial counsel makes this case atypical, we are left with a typical fact situation to weigh. There was substantial delay in bringing appellant to trial—26 to 34 months—almost all of which must be weighed against the government for institutional, not purposeful, reasons. While we cannot penalize appellant for counsel's failure to assert the right, we perceive no reason on this record—including evidence and argument at the post-trial hearing—indicating that competent counsel would have done so. The only prejudice alleged amounted to pure speculation about the loss of a favorable memory by appellant's mother. We hold, accordingly, that the government has carried its burden of demonstrating no speedy trial violation warranting dismissal. *See Day, supra* at 973.

### V.

We turn, finally, to the question whether appellant may now file motions to suppress Appenzeller's eyewitness identification and appellant's statement to the police.

In support of the motion for new trial, appellant sought to show that counsel's failure to file suppression motions was another indication of ineffective assistance of counsel. In doing so, appellant felt obliged to demonstrate only that there was a "likelihood" or "possibility" of success, such that effective counsel would have filed them; he did not perceive an obligation, and thus did not introduce evidence, to prove that the motions, if timely made, would have been successful.

■ At the motion hearing, appellant undertook to prove too little. Even if we assume that no responsible criminal defense lawyer would have failed to file suppression motions on the facts here, it does not follow that this failure helped "blot out the essence of a substantial defense"—unless the court would have granted the motions and thus kept the evidence from the jury. If the motions, pressed in the most effective way possible, would still have been denied, any incompetence in failing to pursue them would have been irrelevant, for it could not have influenced the fact-finder. Accordingly, if a defendant seeks a new trial on the ground of incompetent counsel's failure to file a suppression motion, the defendant must be prepared at the time of the motion hearing to introduce whatever evidence will be necessary to succeed with suppression; otherwise, the point will fail, and the ruling will become the law of the case. *See Duddles v. United States*, D.C.App., 399 A.2d 59, 64 (1979); *Wheeler v. United States*, D.C. App., 300 A.2d 713, 715 (1973); *Jenkins v. United States*, D.C.App., 284 A.2d 460, 463–64 (1971); *cf. Smith v. United States*, D.C. App., 406 A.2d 1262, 1263–64 (1979) (unsuccessful suppression motion before original prosecution was dismissed without prejudice is law of the case for second prosecution).[17]

In contrast with the trial itself, where appellant, because of grossly incompetent counsel, was not able to develop his case before the jury, appellant had an opportunity at the hearing on the new trial motion, with new counsel, to develop a complete record on which the court could rule as to the validity of a suppression motion. It would be a waste of judicial resources for a court to grant a new trial solely or partially on the ground that incompetent counsel failed to file a nonfrivolous—or even a highly persuasive—suppression motion, and then for it to turn out, after still another

---

**17.** It is possible that the court, in the proper exercise, of its discretion, could decline to entertain, and thus defer, the suppression issue if other evidence were sufficient to justify a new trial on the ground of incompetent counsel. But once the trial court takes the issue, as it did here, that issue will be finally resolved on appeal of its denial, and will thus become the law of the case.

There is, however, a new-evidence exception. The trial court can reconsider motions in exceptional circumstances where "new grounds, including new facts ... which the defendant could not reasonably have been aware of" are offered. *Wheeler, supra* at 716 (quoting *Jenkins, supra* at 464.)

hearing, that the motion is ultimately denied.[18]

In this case, at the hearing on the new trial motion, appellant did not introduce evidence on the suppression issues—eyewitness identification and appellant's statement to the police—that would have amplified or changed the record created on these matters when appellant was represented by grossly incompetent counsel. For example, because appellant did not call for testimony by any of the police officers who had been involved in taking appellant's statement or identification, the court was forced to rule on the basis of the officers' testimony at trial. We must presume, therefore, that additional testimony would have added nothing.

On this record, we perceive no trial court error in finding no merit to a motion to suppress identification, for there was sufficient evidence of reliability to outweigh any suggestiveness. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Nor was there error in finding no evidentiary basis to suppress appellant's statement to the police.

## VI.

In summary, we reverse appellant's convictions for deprivation of his Sixth Amendment right to effective assistance of counsel. Dismissal for denial of due process from preindictment delay, or for lack of a speedy trial, is unwarranted. Accordingly, we remand the case for a new trial. However, the trial court properly ruled that there were no bases for motions to suppress the identification of appellant or his statement to the police. Those rulings are the law of the case.

*Reversed and remanded.*

HARRIS, Associate Judge, dissenting:

I respectfully dissent. The majority opinion is but a parody of a well-reasoned decision on the question of ineffective assistance of counsel.[1] The majority recognizes (as it must) the existence and controlling nature of precedents such as *Angarano v. United States*, D.C.App., 312 A.2d 295 (1973), *rehearing denied*, 329 A.2d 453 (1974) (en banc), and *Bruce v. United States*, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). Those decisions make it clear that to make reversal appropriate, not only must defense counsel have been grossly incompetent—which is recognized by all to be true in this case—but moreover that that incompetence must have blotted out the essence of a substantial defense.

The majority opinion contains many words, but those words obfuscate rather than elucidate. If one reads the majority opinion carefully, it is apparent that not a hint of a substantial defense was blotted out by defense counsel's inept performance. Illustrative of this fact is the emphasis placed in the majority opinion upon the idea that appellant's mother "partially corroborated" (slip op. at 808–809) appellant's alibi defense.

We are, of course, obliged to view the evidence in the light most favorable to the government. That evidence includes a detective's testimony—credited by the trial court—that appellant admitted that he was at the scene of the crime. At trial, appellant claimed to have been at home when the offenses were committed, an alleged fact which he supposedly remembered because it was his nephew's birthday. Appellant's mother had no idea whether appellant was at home at the time, but quite understandably knew that the date of the crime happened to be the birthday of her grandson. I am at a loss to understand how the majority finds meaningful corroboration of a supposed alibi in the fact that the crimes were committed on the date of appellant's nephew's birthday.

18. In *Oesby, supra*, we treated trial counsel's failure to make a suppression motion as among the totality of circumstances mandating a new trial for ineffective assistance of counsel. We did not address the law-of-the-case issue.

1. I concur in the conclusions reached by the majority on the other issues.

The majority also seems dismayed that appellant, obviously without the substance of any defense at all, was "particularly easy prey" (slip op. at 809) for the cross-examination of the prosecutor. There is no hint by the majority that the cross-examination was improper; the majority seems simply to wish that appellant had been more proficient at coping with it. The majority opinion could persuade only someone who strongly wishes to be persuaded.

Little purpose would be served by my writing at length. The able trial judge who conducted the hearing on the motion for a new trial wrote a carefully considered Memorandum and Order. So that this case may be considered in its proper perspective, I simply quote with approval the trial court's opinion, deleting only that portion of it which dealt with the speedy trial issue.

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Criminal Division

Criminal No. 42964–76

UNITED STATES

v.

QUINTON ASBELL

MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant, Quinton R. Asbell, for a new trial based on ineffective assistance of counsel. He was convicted of robbery and second degree burglary on July 18, 1978, and later committed to the custody of the Attorney General under Section 5010(b) of the Federal Youth Corrections Act. Upon consideration of defendant's motion, the opposition thereto, a reply memorandum, the trial transcript, and the testimony adduced during the two-day motions hearing, the Court concludes that the defendant's constitutional right to effective assistance of counsel has not been violated.

### FACTS

On September 17, 1975, two individuals entered a construction site trailer at Suit-land Parkway and Staunton Roads, S.E., Washington, D. C. and robbed at gunpoint the occupant of the trailer, Mr. Randolph Appenzeller, of money, a ring and surveying equipment. During the holdup, Mr. Appenzeller's co-worker, Mr. Massey, entered the trailer but was ordered outside by the robbers. The defendant was arrested two days later for receiving stolen property at another construction site after police had been notified that several individuals were attempting to sell surveying equipment. Mr. Appenzeller and Mr. Massey were brought to the scene and identified the equipment as that taken from them on September 17, 1975. Mr. Massey also identified the defendant as one of the individuals he saw inside the trailer. The defendant admitted to the police that he had been at the construction site where Mr. Appenzeller was robbed, but denied having gone inside the trailer.

In April, 1976, the defendant was tried and acquitted in the juvenile branch of this Court of receiving stolen property. Mr. Appenzeller testified at these proceedings as a government witness. At some point during the trial, Mr. Appenzeller told the attending police officers that the defendant was one of the persons involved in the September 17, 1975, robbery. The defendant was arrested on May 18, 1976, and indicted on January 26, 1977, for armed robbery, robbery, assault with a dangerous weapon, second degree burglary while armed and second degree burglary.

On July 17, 1978, the armed robbery and related offenses trial began with Mr. Appenzeller and Mr. Massey identifying the defendant as one of the robbers. These two witnesses also testified that the same property recovered from the defendant on September 19, 1975, had been stolen from the construction trailer on September 17, 1975. Detective Leadman testified that the defendant had made a statement after his arrest which placed him at the scene of the robbery on September 17, 1975. The jury found the defendant guilty of robbery and second degree burglary.

## DISCUSSION

The District of Columbia Court of Appeals recently has reaffirmed its adoption of the test in *Bruce v. United States*, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967), which holds that to prevail on an ineffective assistance of counsel claim, a defendant must show "that there has been gross incompetence of counsel and that this has in effect blotted out the essence of a substantial defense . . ." 126 U.S.App.D.C. at 339–40, 379 F.2d at 116–17. *See Oesby v. United States*, 398 A.2d 1, 3–4 (D.C.App.1979). Incompetence alone is insufficient to warrant the granting of a new trial. Such incompetence must be such as to blot out the essence of a substantial defense. The Court is satisfied that trial counsel was grossly incompetent in his representation of the defendant, but finds that such incompetence, under the totality of the circumstances, has not caused the defendant actual prejudice by blotting out the essence of a substantial defense.

### (A) *Gross Incompetence of Trial Counsel*

The right to effective assistance of counsel attaches before trial, *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 n.14 (1970), and extends through the post-trial proceedings. *Oesby v. United States, supra*, 398 A.2d at 4. The record before the Court indicates that throughout his representation of the defendant, trial counsel failed to take a number of important actions. The Court finds as a fact that:

1. Trial counsel failed to conduct a full interview with the defendant to determine all relevant facts known to the defendant.
2. Trial counsel failed to keep the defendant informed of his case or prepare him adequately for trial.
3. Trial counsel failed to conduct a prompt investigation of the case and failed to interview any of the witnesses called by the government.
4. Trial counsel failed to engage in any meaningful discovery with the government with regard to the facts of this case.

5. Trial counsel failed to engage in any meaningful plea discussions with the prosecutor.
6. Following the verdict, trial counsel did not submit favorable information to the court for purposes of sentencing.
7. Trial counsel apparently has not retained any records with regard to this case.

The sum total of the facts recited above amounts to gross incompetence on the part of defendant's trial counsel. *See Oesby v. United States, supra*, 398 A.2d at 7; *United States v. Sweet*, Criminal No. 9994–75, 106 D.W.L.R. 1677, 1684, Stewart, J. (September 15, 1978).

### (B) *Blotting Out of a Substantial Defense*

The second part of the *Bruce* test requires the defendant to prove that trial counsel's incompetence caused him actual prejudice by blotting out the essence of a substantial defense. The burden of proving actual prejudice in a claim of ineffective assistance of counsel is considerable. *See Thornton v. United States*, 357 A.2d 429, 435 (D.C.App.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). A substantial defense lost due to incompetence must be shown to be a defense as a matter of law, and one that is available from the facts and circumstances of the particular case. *See Angarano v. United States*, 312 A.2d 295, 300 (D.C.App.1973). In determining whether the essence of a substantial defense has been blotted out, this Court must examine trial counsel's conduct and the nature of the defense in light of the "totality of the circumstances." *Oesby v. United States, supra*, 398 A.2d at 8 n.15.

The defendant contends that several of his substantial defenses were blotted out by trial counsel's incompetence. First, defendant suggests that trial counsel's failure to file pretrial motions to suppress the in-court identification of the complaining witness and to suppress an inculpatory statement made by defendant to the police after his arrest blotted out his defenses of misidenti-

fication and alibi. The defendant also contends trial counsel should have filed motions to dismiss based on pre-indictment delay and failure to provide a speedy trial. Finally, defendant claims that trial counsel's failure to investigate and prepare an alibi defense resulted in that defense being blotted out by witness memory loss.

### 1. Failure to File Motion to Suppress Defendant's Statement

Defendant claims that a motion to suppress an alleged involuntarily procured statement by defendant should have been made by trial counsel. This statement, which was made to the police at the time of defendant's original arrest, placed the defendant at the scene of the robbery. Although no pretrial motion had been filed, the trial Court entertained defendant's oral motion to suppress the statement. The basis of defendant's oral motion was that the defendant's signature did not appear on the waiver [of] rights form. After a bench conference, this motion was held in abeyance until a detective appeared and testified that he had read the defendant his rights prior to the defendant's statement. Trial counsel did not renew his motion to suppress after this testimony. The Court has examined the record and finds as a fact that defendant was informed of his *Miranda* rights, that he understood his rights and that he thereafter made the statement voluntarily. An attorney is not required to undertake what appears to be fruitless tasks, including the filing of meritless motions. *See Oesby v. United States, supra,* 398 A.2d at 8. Thus, trial counsel's failure to file a pretrial motion or renew his motion to suppress after the detective testified did not prejudice, much less blot out, defendant's defense of misidentification or alibi.

### 2. Failure to File Motion to Suppress Identification

Defendant contends that trial counsel should have moved to suppress the identification testimony of the complaining witness because of a suggestive pretrial identification. The complaining witness, Mr. Appen-

zeller, testified at trial that he first identified the defendant seven months after the incident as one of the individuals who robbed and assaulted him. This identification took place during the defendant's juvenile trial. The police officers allegedly pointed to the defendant and asked Mr. Appenzeller whether the defendant was one of his assailants.

The Supreme Court, in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), said that an in-court identification of a defendant might constitute a denial of due process if the pretrial identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* 388 U.S. at 302, 87 S.Ct. at 1972. More recently, in reaffirming the *Stovall* principle, the Court has held that the taint of improper pretrial identification procedures could be obviated by showing that the witness' original observation of the defendant was reliable. *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Holding that reliability, not deterrence of improper police procedures, was the "linchpin in determining the admissibility of identification testimony," *id.,* the Court stated that the indicia of reliability included the opportunity to view the criminal at the time of the crime, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.*

The trial testimony concerning Mr. Appenzeller's first identification of the defendant does not indicate whether it was made under impermissibly suggestive circumstances. Defendant has not provided the Court with any additional evidence of suggestiveness. Nevertheless, the Court finds that even if such evidence were produced, Mr. Appenzeller's original observation of the defendant was sufficiently reliable to remove any taint caused by suggestiveness in the original identification procedures.

Mr. Appenzeller testified at trial that two black males, one tall and thin, the other shorter and pudgy, first came into the well-lit construction trailer at midday on September 17, 1975, and asked him whether he was interested in buying radios. Appenzeller was not interested. Approximately four hours later, Appenzeller saw these same two individuals come back inside the trailer while he was talking on the telephone. After Appenzeller put the receiver down, he had a gun placed to his head, and was tied up, beaten and robbed. Mr. Appenzeller testified that the defendant was the short pudgy man who participated in the robbery and assault. While Appenzeller's first positive identification of the defendant took place seven months after the robbery, the record indicates that he was certain at this later date that the defendant was one of his assailants. Under these circumstances, the Court finds that Mr. Appenzeller's in-court identification of the defendant was proper. Trial counsel's failure to make the meritless motion to suppress identification caused the defendant no actual prejudice.

### 3. Failure to File Motion to Dismiss for Pre-indictment Delay

Defendant contends that trial counsel should have moved to dismiss the indictment because of excessive pre-indictment delay. There was a sixteen month period of time between the robbery and the filing of the indictment charging the defendant with armed robbery and lesser crimes.

A Fifth Amendment Due Process claim based on pre-indictment delay is made "concrete and ripe for adjudication" not by a mere lapse of time, but by "proof of actual prejudice." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); [1] *Jefferson v. United States*, 382 A.2d 1030, 1033 (D.C.App.1978). Defendant claims actual prejudice because the potential alibi witness, his mother, can no longer remember whether she was with the defendant on the day the offense was committed. Standing alone, such speculative allegations of faded witness memory do not constitute actual prejudice. *See United States v. Blevins*, 593 F.2d 646 (5th Cir. 1979). In addition, the defendant's mother testified at the evidentiary hearing that she did not remember in May of 1976 whether the defendant was with her during the time of the robbery on September 17, 1975. This testimony suggests that even if the indictment had been filed promptly after Mr. Appenzeller's identification in April 1976, the defendant's alibi defense would not have. been prejudiced. Trial counsel's failure to file such a motion to dismiss caused the defendant no actual prejudice.

\* \* \* \* \* \*

### 5. Failure to Investigate and Prepare Alibi Defense

Trial counsel did not adequately investigate the possibility of, or prepare, an alibi defense for the defendant. This was clearly a breach of trial counsel's duty to conduct an independent investigation of the facts and circumstances of a given case. *See Hampton v. United States*, 340 A.2d 813, 817 (D.C.App.1975). The issue remains whether the defendant's purported alibi defense was "substantial."

The defendant testified at the evidentiary hearing and during the trial that he had been with his mother at the time of the robbery. Detective Leadman testified at trial that the defendant made a statement to him on September 19, 1975, which placed the defendant at the scene of the robbery at 4:30 p. m., on September 17, 1975. The defendant's mother testified at the evidentiary hearing that she does not remember whether her son was with her at the time of the robbery on September 17, 1975. The defendant has produced the names of no other potential alibi witnesses. Trial counsel testified that the defendant never told him before trial about the alibi witness. In view of the totality of the circumstances, the Court finds that the defendant did not have a substantial alibi defense.[3]

Even assuming that a substantial alibi defense existed, trial counsel's conduct did not blot it out. Defendant's mother testified that by the time the defendant was arrested on May 18, 1976, she did not remember whether the defendant was with

her on the date of the robbery. Thus, even an immediate investigation by trial counsel upon his appointment eight months later on February 9, 1977, would not have revived the memory of defendant's only alibi witness. Additionally, the jury in defendant's trial did hear the defendant's version of his alibi defense. While this testimony was first brought out on cross-examination, the Court finds that this adversary context did not blot out the essence of the defendant's alibi defense.

This Court deplores the evidence of trial counsel's incompetence as demonstrated by the record before it. The ruling herein should *not* be interpreted as an acquiescence in or approval of such incompetence.[4] However, the law is clear that trial counsel's conduct must *blot out* the essence of a *substantial* defense before a new trial will be granted. This is a difficult burden and one which has not been met by the defendant.

In view of the foregoing, it is, this 9th day of November, 1979,

ORDERED, that the defendant's motion for a new trial based on ineffective assistance of counsel be, and hereby is, denied.

/s/ John R. Hess
John R. Hess
Judge

[1] *Lovasco* held that in cases of pre-indictment delay, "proof of prejudice is generally a necessary but not sufficient element of a due process claim and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2048. Later federal court decisions have held that the defendant has the burden of proving prejudice even before analysis of the reasons for the delay is conducted. *See, e. g., United States v. West*, 568 F.2d 365, 367 (5th Cir. 1978). In this case, defendant has not demonstrated any prejudice, so the reasons for the delay—apparently due to lack of communication between the United States Attorney's Office and the detective assigned the case—do not enter into the analysis.

[3] Dr. O. V. Aiken, a social worker at the Lorton Youth Center, testified at the motions hearing that the defendant told her after his

**2.** In a comparable case, another division of this court considered an equally incompetent performance by the same defense counsel. That division readily concluded that no essence of a substantial defense had been blotted out, fol-

conviction that he was with a Mr. Michael Haywood during the robbery, but that Mr. Haywood, and not the defendant, had control of the gun. This testimony had no impact on the Court's view of the alibi defense.

[4] Defendant has placed considerable reliance on the decision of Judge Stewart of the Superior Court in *United States v. Sweet*, Criminal No. 9994–75, W.D.L.R. Vol. 106, No. 180 p. 1677. *Sweet* is factually analogous primarily because it involves the same trial counsel as the instant case. In *Sweet*, the court held that trial counsel blotted out a substantial defense by failing to interview and call as a witness an individual who testified at the post-trial hearing that the complainant in the rape case talked with him the day after the defendant allegedly raped her. The complainant told this witness that she had made up the rape story so as to avoid an embarrassing situation. No such substantial defense was blotted out in the instant case. Rather, the government developed substantial circumstantial evidence as well as direct identification testimony implicating the defendant. Unlike *Sweet*, trial counsel's incompetence did not reduce the trial to a "swearing contest" but, instead, had little, if any, impact on the outcome of the trial.

I am as displeased as the majority by the quality of representation which appellant received. So, obviously, was the trial judge. Nonetheless, the trial judge correctly applied the law to the facts. The majority is unwilling to do so.[2]

lowed the relevant precedents, and affirmed the convictions by an unpublished Memorandum Opinion and Judgment. *Gillespie v. United States*, No. 80–819, July 27, 1981.